## WILSON SEWING MACHINE CO. v. RUTLEDGE, EX'R, ET AL.

1. WRITTEN CONTRACT: INTERPRETATION OF. J. T. P. was agent for plaintiff, and M. P., with others, had executed with him to plaintiff two bonds for $1,500 and $1,000 respectively, to secure the indebtedness of J. T. P. as such agent. Subsequently M. P. executed to plaintiff three of the notes in suit as collateral security for J. T. P.'s indebtedness. After this, plaintiff, M. P. and J. T. P. had a settlement, whereupon M. P. made another note to plaintiff for $1,328, and executed the mortgage in suit to secure all of his aforesaid notes. At the time of said settlement, plaintiff gave to M. P. a statement of its account with J. T. P., in which the latter was charged with machines, etc., and credited with sundry other notes given by various persons for machines, and, upon this statement, executed a writing as follows:

   "Received, June 11, 1877, from M. P., Esq., his mortgage note for $1,328, proceeds of collection of all paper described in the above statement of account, except the notes of M. P., W. E., I. F. and J. W., to be credited as collected on the several notes of M. P., in their order of maturity; said notes of M. P., amounting to $2,569.95, being given as collateral settlement of the indebtedness of J. T. P. under his two bonds of $1,500 and $1,000 respectively, signed by M. P., J. K., and C. W. C."

   In an action against the executor of M. P. and others to foreclose the mortgage, *held* that the true construction of the writing is that M. P. was to have credit for *all* sums paid on the notes mentioned in the account, whether paid before or after the execution of the mortgage, except the payments shown by the account itself, and except the payments on the notes of M. P., W. E., I. F. and J. W.

2. EVIDENCE: PAROL TO EXPLAIN WRITING: PAROL BALANCED—WRITING ALONE RELIED ON. Where parol testimony introduced by plaintiff and defendant, to show what was intended to be expressed in a written contract, is equally balanced, the court must rely wholly upon the language of the writing to direct in its interpretation.

3. DECREE OF FORECLOSURE: SHOULD DETERMINE AMOUNT DUE. In an action to foreclose a mortgage which was given as collateral security for the payment of sundry notes held by plaintiff, on which partial payments had been made, for which payments defendant was entitled to credit, it was error for the court in the final decree, after rendering judgment for the amount of the mortgage notes, to order the plaintiff, within six months, to file with the clerk the secured notes with a report of the payments thereon, and to order the clerk to credit the sum of the payments, and of the notes not accounted for, upon the judgment, and to issue special execution for the remainder. The court should have determined the precise amount of the credits, and rendered judgment accordingly, and should have ordered the uncollected notes to be filed with the clerk for the use of the defendant upon payment of the judgment.

*Appeal from Taylor Circuit Court.*

WEDNESDAY, DECEMBER 6, 1882.

THIS is an action in chancery to foreclose a mortgage upon real estate executed by Moses Parks and his wife, Lucinda Parks, to secure their promissory notes. Pending the proceedings in the court below both of the mortgagors died. John Rutledge, executor of Moses Parks, and other persons, were substituted as defendants. The cause was sent to a referee, and upon the coming in of his report a decree of foreclosure was entered for a part of the amount claimed by plaintiff to be due upon the notes. Plaintiff appeals. The facts of the case appear in the opinion.

*Brown & Dudley*, for appellant.

*Lyman Evans*, for appellees.

BECK, J.—I. The defendants in their answer allege that Moses Parks executed to plaintiff two bonds, whereby he became

1. WRITTEN contract: interpretation of.

bound as surety for John T. Parks in the sum of $2,500 for the payment of the indebtedness of the latter to plaintiff growing out of the sale of sewing-machines and the indorsement of notes. Subsequently Moses Parks executed to plaintiff three of the promissory notes in suit, amounting in the aggregate to $1,241.95, as collateral security upon plaintiff's claim against John T.

Parks. After these transactions, plaintiff by his agent and Moses Parks had a settlement, whereupon the latter made another note to plaintiff for the sum of $1,328, and, together with his wife, executed the mortgage in suit to secure the several notes just mentioned.

But it is alleged in the answer of defendants that it was understood and agreed by the parties that plaintiff had notes to a large amount indorsed by John T. Parks, for which Moses Parks was liable in case they were not paid by the makers thereof, and that all moneys collected upon such notes should be credited upon the notes secured by the mortgage in suit, in the order of their maturity. It is alleged that plaintiff has collected many of the notes, for which no credit has been given to defendants.

II. We think this defense is established by the evidence, which may be briefly stated. It is shown that when the mortgage was executed plaintiff's agent presented to Moses Parks an account showing its transactions with and claim against John T. Parks, for which Moses was bound as surety to the extent of $2,500. John T. Parks was charged in this account with sewing-machines and other articles amounting to $3,803.36, and was credited with sundry notes executed by persons purchasing machines, together with the three notes first executed by Moses Parks, which left a balance of $117.91 due plaintiff. Three of these notes were noted as paid in part. Upon the account its agent indorsed and executed in plaintiff's name an instrument in the following language:

"Received June 11, 1877, from Moses Parks, Esq., his mortgage note for $1,328, proceeds of collection of all paper described in the above statement of account, except the notes of Moses Parks, W. Epperley, I. Fluherty, and J. Walker, to be credited as collected on the several notes of Moses Parks in their order of maturity; said notes of M. Parks, amounting to $2,569.95, being given as collateral settlement of the indebtedness of John T. Parks under his two

bonds of $1,500 and $1,000, respectively, signed by M. Parks, J. Keasling, and C. W. Cooper."

III. Plaintiff insists that the true construction of the instrument is to the effect that defendants are to be credited with no other sums than those collected upon the notes after the execution of the mortgage, while defendants maintain that they are to have credit for all sums paid upon said notes, whether before or after the execution of the mortgage, excepting the payments shown by the account, and the payments upon notes mentioned in the instrument. This statement presents the contention between the parties, which, for the reason that many of the notes had been paid before the mortgage was executed, is of controlling importance in the case.

We think the true construction of the instrument sustains defendants' position. The language which is to be interpreted is this: " Proceeds of collection of all papers described in the above statement   *   *   *   to be credited as collected on the several notes of Moses Parks." What is to be credited on Moses Parks' notes? Proceeds of all paper named in the statement. These proceeds are not such as should be collected after the mortgage was executed, or upon notes not then paid, but the proceeds of *all notes*. When is the credit to be made? No time is expressed. The words "to be credited," it may be admitted, express a future action. How are the proceeds to be applied? The instrument replies: "*As* collected on the notes of Moses Parks." The language of the instrument, which can hardly be made plainer by comment, means that the proceeds of all the notes, without regard to the time of collection, shall be credited upon Moses Parks' notes.

Our conclusion is supported by the fact that the parties making the contract did not at the time know what notes had been paid other than those so marked upon the statement, though it was understood that payments had been made upon some of them. Surely they could not have intended by the language of the instrument to restrict credits to payments made after the mortgage was executed.

IV. Each of the parties introduced testimony tending to show the terms of the contract intended to be expressed by 2. EVIDENCE: the writing. One witness testified for each party. parol to explain writing. Defendants insist that plaintiff's witness was not competent, for the reason that he was an agent of the corporation. We shall not determine the question thus raised, but, for the purpose of the case, regard his evidence as competent. In this view, the most that can be said is that there is a balance of the testimony of two witnesses. Each testified pointedly to the agreement as claimed by his side of the case. Without inquiring to what extent this testimony is competent to aid in the interpretation of the writing, we reach the conclusion that, as there is a balance of the oral testimony, we must depend wholly upon the language of the instrument to direct us in its interpretation.

V. The decree contains the following provision: "And plaintiffs are entitled to special execution against said land 3. DECREE of foreclosure: should determine amount due. for the amount of said judgment. But execution shall not issue on said judgment till plaintiffs file with the clerk of this court an accounting on the notes held by them for collection, and application on the notes in suit herein, which notes are found by report of referee to still be in the hands of plaintiffs, and not accounted for, and plaintiffs in said showing, shall turn over to the clerk all the notes unpaid, for the use of defendant, administrator, and the clerk shall credit the cash collected by plaintiff, and notes not accounted for on the judgment as of this date, and execution shall issue for the balance. This showing is to be made by plaintiffs within six months from this date, and interest shall only run on the amount found due after said accounting, and if plaintiffs do not make said accounting within said time, then the clerk of this court is authorized and empowered to credit the full amount of said notes not accounted for as of this date on this judgment, and issue execution at any time thereafter." We think the conditions of the decree are erroneous. The court

should have determined the precise amount of credits to which defendants are entitled, and rendered judgment accordingly, and should have required plaintiff to file with the clerk all the uncollected notes, to be delivered to defendant upon payment of the judgment. For such a decree the cause will be remanded to the Circuit Court.

MODIFIED AND AFFIRMED.