PIERSON ET AL V. LANE.

1. **Conveyance:** CONDITIONAL FEE: FEE TAIL SPECIAL: RULE IN SHELLEY'S CASE. A grant to M. P., and the heirs of her body begotten by her present husband, G. W. P., would at common law have created a conditional fee, or, after the statute *de donis*, a fee tail special, to which the rule in Shelley's Case would not apply.

2. ————: RULES OF COMMON LAW: HOW FAR IN FORCE IN IOWA: STATUTE *de donis*. The principles of the common law have been adopted in this country only so far as they are applicable to the habits and conditions of our society, and in harmony with the genius, spirit and objects of our institutions; and the statute *de donis*, being designed to place restraints upon alienation and to create perpetuities for the purpose of maintaining a landed aristocracy, is not in harmony with the genius of our institutions, and is not in force as a part of the common law of this State.

3. ————: FEE TAIL SPECIAL: ALLODIUM IN IOWA. It was accordingly *held* that, where there was a grant of real estate to "M. P., and the heirs of her body begotten by her present husband, G. W. P.," and M. P. had heirs by G. W. P., M. P. thereby became invested with the absolute fee, and a conveyance of the premises by her and her husband to the defendant herein vested in him the entire estate.

*Appeal from Des Moines District Court.*

WEDNESDAY, DECEMBER 6.

THE plaintiffs bring this action for the possession of certain real estate, and claim title thereto as the children of the late Minerva Pierson, deceased, begotten by her husband, George W. Pierson. The defendant for answer claims title to the land under a deed of conveyance from Minerva Pierson and her husband. The plaintiffs filed a demurrer to the answer, which the court overruled. The plaintiffs appeal.

*T. C. Whitely* and *P. Henry Smyth & Son*, for appellants.

*Geo. H. Lane* and *Hall & Huston*, for appellee.

DAY, J.—The plaintiffs claim the property in question as the children and heirs of Minerva Pierson, deceased. The

defendant claims the property under a conveyance executed by Minerva Pierson and her husband. The question involved in the case is whether Minerva Pierson had the fee, or only a life estate in the property. Minerva Pierson acquired the property under a deed of conveyance from John Pierson and Sarah Pierson. The portion of this deed under which the question presented arises is as follows: 'We, John Pierson, and Sarah Pierson, his wife.   *   *   *   do hereby grant, bargain, sell and confirm unto the said Minerva Pierson, and the heirs of her body begotten by her present husband, George W. Pierson, the following above described real estate, situated in the city of Burlington, county of Des Moines, and State of Iowa, and described as follows, to-wit: "Lot nine hundred and forty-three K, situated on Valley street in the said city of Burlington. To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto the said Minerva Pierson, and the heirs of her body begotten by said husband, George W. Pierson, forever, to them and their own proper use, benefit and behoof." Appellant's attorneys insist that this case presents the question whether the rule in Shelley's Case is in force in this State, and they insist that it is not in force. The following definition of the rule in Shelley's Case, is declared by Kent to be full and accurate: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 4 Kents Com., *225. "When the rule applies, the ancestor has the power of alienation, for he has the inheritance in him; and when it does not apply, the children or other relations, under the denomination of heirs, have an original title in their own right, and as purchasers, by that

name. The policy of the rule was, that no person should be permitted to raise in another an estate which was essentially an estate of inheritance, and at the same time make the heirs of that person purchasers." 4 Kent, *216. It is evident from the foregoing definition that the rule in Shelley's Case applies to cases where there was a grant of a particular estate to the grantee, with remainder over to a class of persons designated. Where the first taker took the fee simple as a fee tail, there was no necessity for invoking the rule in Shelley's Case, and to such cases the rule does not apply. The grant in this case is to "Minerva Pierson and the heirs of her body begotten by her present husband, George W. Pierson." This grant creates what was known at common law as a conditional fee, and, after the statute *de donis*, as a fee tail special, of which Blackstone gives the following illustration: "As when lands and tenements are given to a man and the heirs of his body on Mary, his now wife, to be begotten," which illustration contains every condition of the grant now under consideration. 2 Blackstone's Com., *114. A fee of this kind was called a conditional fee, because, if the grantee died without having the specified heirs, the land reverted to the grantor. As soon, however, as the specified heirs were born, the estate became absolute and the grantee could alienate it. If, however, he died without having alienated the estate, it descended to the specified heirs only, to the exclusion of all others. The nobility, in order to perpetuate their possessions in their own families, and fetter alienations, procured the passage of the statute *de donis conditionalibus* (13 Edw. 1 Ch., 1), which revived some of the feudal restraints placed upon alienations, and enacted "that from thenceforth the will of the donor be observed, and that the tenements so given to a man and the heirs of his body should at all events go to the issue, if there were any, or, if none, should revert to the donor."

Under this statute it was held that the donor was invested with the ultimate fee simple of the land, expectant on the failure of issue, and the grantee became tenant in fee tail,

without the power of alienation upon the birth of specified heirs who inherited the estate. See 2 Blackstone's Com., *110–113; 3 Kent's Com., 11–15.

Whilst Iowa was a part of the Territory of Michigan, by an act of the Territorial legislature of Michigan, approved March 2d, 1821, it was enacted that all estates tail shall be abolished, and that whenever any person should be vested with such an estate, he should be deemed and adjudged to be seized thereof as an allodium. April 20th, 1836, Congress organized the Territory of Wisconsin, of which Iowa was a part, and, by section 12 of that act, continued and extended the laws of Michigan over Wisconsin.

The law abolishing estates tail continued to be the law of Wisconsin, and was incorporated into the Revised Statutes of 1849, Chap. 56, Sec., 3. By an act of Congress, approved June 12, 1838, Congress organized the Territory of Iowa out of a part of Wisconsin, and, by section 12, extended the laws of Wisconsin over the Territory of Iowa. On the 30th day of July, 1840, the territorial legislature of Iowa repealed all the acts of the Territory of Michigan and the Territory of Wisconsin, which were in force in the Territory of Iowa on the 4th day of July, 1838. Section 2 of this act provided that the repeal of any act by any law of this Territory shall never be construed to revive any act previously in force. Revised statutes of the Territory of Iowa, chapter 130. The appellee insists that the statute *de donis* was repealed by the act of the Territory of Michigan of March 2, 1821, and that it was not revived by the repealing act of the Territory of Iowa of July 30, 1840. Upon the other hand, the appellant contends that, at the time of the passage of the act of March 2, 1821, the statute *de donis* was in force in this country as a part of the common law, and that, when this act was repealed, the common law was thereby revived. 1 Black. Com., *90. We do not deem it necessary to determine the effect of the repealing act of July 30, 1840. The principles of the common law have been adopted in this country only so far

as applicable to the habits and condition of our society, and in harmony with the genius, spirit and objects of our institutions. *Boger v. Sweet,* 3 Scam, 121; *Van Ness v. Packard,* 2 Peters, 137; *Goring v. Emery,* 16 Pick., 107; *Lindsley v. Coats,* 1 Ham., 243; *Commonwealth v. Knowlton,* 2 Mass., 534; *Wagner v. Bissell,* 3 Iowa, 396. The direct object of the statute *de donis* was to place restraints upon alienation and create perpetuities for the purpose of maintaining a landed aristocracy. Such purpose is entirely foreign to the genius and policy of our institutions. "The general policy of this country does not encourage restraints upon the power of alienation of land." 4 Kent's Com., 17. We feel constrained to hold that the statute *de donis* is not "applicable to the habits and conditions of our society," nor in harmony with the genius, spirit and object of our institutions, and hence that it is not in force, as a part of the common law of this State. Whether the limitations in the grant in question should have any greater force than simply to define the heirs who should inherit in the absence of alienation of the property, we need not determine.

It appears that Minerva Pierson had the requsite heirs, which, under the common law, aside from the modification of the staute *de donis,* made her fee absolute. The conveyance by Minerva Pierson and her husband to the defendant invested him with the entire estate. The demurrer was properly sustained.

AFFIRMED.