H. D. KEPLER, Appellant v. C. A. LARSON, Appellee. MYRTLE KEPLER, ET AL., Minors, by TIM DONOVAN, Guardian, Interveners, Appellees.

**Conveyances:** RULE IN SHELLEY'S CASE. A conveyance to one " during his natural life and to the heirs of his body and their assigns in fee simple forever " is within the rule in Shelley's case, notwithstanding a further provision in the instrument limiting the interest of the grantee's wife in the premises and also the power of alienation.

**Conditional conveyances.** A conveyance to one for life and to the heirs of his body and their assigns creates a conditional fee in the first taker, which, upon the birth of a direct issue, ripens into an absolute title that may be alienated by him.

*Appeal from Chickasaw District Court.*— HON. L. E. FELLOWS, Judge.

FRIDAY, SEPTEMBER 21, 1906.

SUIT in equity for the specific performance of a contract to loan money. Interveners came into the case claiming an interest in the property upon which a mortgage

was to be executed, and plaintiff then asked to have his title quieted against them.    There was a decree for defendants, and plaintiff appeals.    *Reversed* and *remanded*.

*Smith & O'Connor* and *R. Feyerbend* for appellant.

*F. F. Swale*, for appellees.

DEEMER, J.— In a contract between plaintiff and defendant, defendant undertook to loan plaintiff a sum of money to be secured by mortgage upon a certain tract of land upon condition that plaintiff should furnish an abstract showing that he had fee-simple title to the property proposed to be mortgaged.   Pursuant to this contract, plaintiff furnished an abstract of title, which defendant refused to accept, because of certain defects therein, and because plaintiff did not in fact have a fee-simple title.   He averred that certain parties, who are now interveners in the case had an interest in the property, and that plaintiff had nothing but a life estate therein.   Interveners, five in number, who are plaintiff's children filed a petition in which they claimed to own a fee-simple title in the property subject to a life estate in their father.   At the bottom of the controversy is a deed in plaintiff's chain of title, from Hugh Kepler and Mary, his wife, of date September 26, 1885, conveying, for an expressed consideration of $5,600, the real property in dispute, the granting clause reading as follows: " Do hereby sell and convey unto the said H. D. Kepler, a life estate in and to the following described premises." The habendum clause contains the following:  " To have and to hold the same, with the rights and appurtenances thereunto belonging to said H. D. Kepler, during his natural life (his wife, if any he may have, to have no other privilege than that of living on the premises for his life, and no longer), and to the heirs of his body and their assigns in fee simple forever.   The said H. D.

Kepler or his wife, if any he may have, deriving no power to convey or place any incumbrances of any kind whatsoever on said premises, except the security for the payment thereof, of the same date as these presents." At the time this conveyance was made H. D. Kepler was twenty-two years old, unmarried and childless. He immediately took possession of the property under the deed, soon thereafter married, and as a result the five intervening children were born; the first on July 23, 1887. Thereafter plaintiff's wife died, and on March 2, 1889, Hugh Kepler and his wife made another deed to plaintiff of part of the property in dispute purporting to convey the fee-simple title thereto to the grantee in the deed. Mary Kepler, the wife of Hugh, died, and Hugh thereafter remarried, and by his second wife had five children. Hugh died leaving his second wife and the five children surviving. The widow, by antenuptial contract, released any dower interest she might otherwise have had in her husband's property. From the children of his father by the second marriage, plaintiff has procured deeds to the property in dispute. After the birth of plaintiff's children, he conveyed the property by warranty deed, to one A. C. Pierce; and Pierce almost immediately reconveyed the property to plaintiff by special warranty deed. Plaintiff claims that under the facts above recited he held and now holds title absolute and in fee simple to the real estate he offered as security, is entitled to have the same quieted in him as against interveners, and that he is entitled to a decree of specific performance of his contract for the loan of money by defendant. This contention is based upon two propositions: First, that under the rule in Shelley's case, he became the absolute owner in fee simple of the property in dispute in virtue of the deed from Hugh Kepler and Mary Kepler; and, second, that even if this be not true, he became invested with that title under the conveyances hitherto mentioned — the remainder being contingent and subject to destruction through conveyances from the owners

of the reversion. The rule in Shelley's case is in force
in this state, and the Legislature has not seen fit to abrogate
it, even after being advised in the most positive terms, that
it is a part of the common law which came to us as a val-
uable heritage, The difficulty we shall have with it in the
future is in its application to the facts of each individual
case. The rule is announced in *Doyle v. Andis,* 127 Iowa,
36; to which reference is made. It is also settled that in
construing deeds all parts thereof are to be taken into
account, and granting clause and habendum read together
in arriving at the proper interpretation of an instrument.
*Brown v. Brown,* 125 Iowa, 218.

Going back now to the original deed under which plain-
tiff claims, we find that the conveyance was to him. dur-
ing his natural life, and to the heirs of his body and their
assigns in fee simple forever. If this were

1. CONVEYANCES: all, there could be no doubt of the proposition
rule in Shel-
ley's case.  that the rule in Shelley's case would con-
trol. See Doyle v. Andis, *supra; Wilson v. Rusk,* not
officially reported (Iowa), 103 N. W. 204. Appellees
contend, however, that by reason of the provision rela-
tive to the wife's privilege, and the provision in restraint
of alienation, the rule does not apply. Where a grantor
retains no reversionary interest, a provision in restraint
of alienation is void. *McCleary v. Ellis,* 54 Iowa, 311.
And this is especially true when applied to conveyances
which fall within the rule of Shelley's case. *Doebler's
Appeal,* 64, Pa. 9; *Clarke v. Smith,* 49 Md. 106; *Van
Olinda v. Carpenter,* 127 Ill. 42 (19 N. E. 868, 2 L. R. A.
455, 11 Am. St. Rep. 92); *Fowler v. Black,* 136 Ill. 363
(26 N. E. 596, 11 L. R. A. 670); *Van Grutten v. Foxwell,*
66 Law J. (Q. B.) 745; *Pierson v. Lane,* 60, Iowa, 60;
*Blackwell v. Blackwell,* 124 N. C. 269 (32 S. E. 676).
This matter is fully discussed in volume 1, pages 362, 363,
of Preston on Estates wherein he says that " Neither the
express declaration that the ancestor shall have an estate

for his life, and no longer, nor that he shall have only an estate for life in the premises, and that after his death it shall go to his heirs of his body, and in default of such heirs vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of testator, nor that the ancestor shall be tenant for his life, and no longer, and that it shall not be in his power to sell, dispose, or make away with any part of the premises will change the word heirs, into a word of purchase." *Allen v. Craft,* 109 Ind. 476, (9 N. E. 919, 58 Am. Rep. 425); *Hageman v. Hageman,* 129 Ill. 164, (21 N. E. 814.) These cases and others like them seem to hold that the controlling question is the nature of the estate conveyed to the heirs. If the estate is so given that it is to go to every person who can claim as heir of the body of the first taker, the words, " heirs of his body " must be considered words of limitation, notwithstanding any restraints which may have been attempted on the power of alienation by the first taker. The majority are of opinion, not only that the rule of Shelley's case is in force in this state, but that the facts of this case bring it within that rule.

II. But if wrong in this, and assuming that the conveyance was to H. D. Kepler and to the heirs of his body and their assigns, the estate conveyed was a conditional fee, 2. CONDITIONAL CONVEYANCES. which, after the birth of a child, who was an heir of his body, if not before, was alienable by the grantee Kepler. *Pierson v. Lane,* 60 Iowa, 60; *Moody v. Walker,* 3 Ark. 147; *Kirk v. Furgerson,* 46 Tenn. 479; *Simmons v. Augustin,* 3 Port. (Ala.) 69; *Croxall v. Sherrerd,* 5 Wall. (U. S.) 268, (18 L. Ed. 572.) The statute *de donis,* which was enacted to meet this situation and for the purpose of entailing estates, is contrary to the spirit of our institutions, and has never been in force in this state. Pierson v. Lane, *supra.* We have no estates tail in this jurisdiction. Instead, we have the conditional fees prevailing before the enactment of the statute *de donis.*

Conceding *arguendo*, that the rule in Shelley's case does not apply, and that the conveyance in question is to Kepler and the heirs of his body, a conditional fee passed thereby, and after the birth of direct issue Kepler could convey absolute title, and by the same token could mortgage the land.   We shall not go into the history of this abstruse subject.   Suffice it to say, that, as the statute *de donis* is not in force in this state, the conveyance was either of a fee-simple absolute under the rule in Shelley's case, or of a conditional fee, if it should be construed as above indicated, and, in either event, Kepler could convey good and perfect title after the birth of a child.   Indeed the conveyance was good as against every one save his grantor, even before the birth of a child.   *Izard v. Middleton, Bailey, Eq.* (S. C.) 228.   Interveners are in no position to challenge it.   Upon this proposition we are all agreed.

III.   Of course, if the rule in Shelley's case does not apply, and it should be held that the conveyance was of but a life estate to Kepler, with remainder over to his children or to the heirs of his body, that remainder was a contingent one, dependent upon the birth of children.   *Taylor v. Taylor,* 118 Iowa, 407; *Zuver v. Lyons,* 40 Iowa, 510. Upon the birth of a child or children, the remainder became vested, subject only to be opened by the birth of other children, and from that time forth could not be destroyed by any act of the tenant of the particular estate or of the reversion.   Plaintiff did not acquire title from the reversioner until after the birth of his first child, and if the rule in Shelley's case does not apply, and the conveyance should be treated as passing a life estate to plaintiff, with remainder over to the heirs of his body, the conveyance to him by the reversioner did not give him a title in fee. Nothing said in *Archer v. Jacobs,* 125 Iowa 467, runs counter to these views.   Indeed, much that is there expressed supports the rules here stated.   But we need not speculate upon this aspect of the case.   Plaintiff has

either a fee-simple absolute under the rule in Shelley's Case, or a conditional fee, alienable because of the birth of issue, and the trial court should have granted him the relief asked, and quieted his title against the interveners. As supporting our conclusions on the whole case, see *Coots v. Yewell,* 95 Ky. 367 (25 S. W. 597); *Amos v. Amos,* 117 Ind. 19, (19 N. E. 539); *Ross v. Adams,* 28 N. J. Law, 160; *Doe v. Considine,* 6 Wall. (U. S.) 458, (18 L. Ed. 869); 2 Wash. Real Prop. 223.

The decree must be reversed, and the cause remanded for one in harmony with this opinion.

*Reversed* and *remanded.*