GEORGE F. SAGERS, and others, v. PAULINE SAGERS, Appellant.

**Wills:** ESTATE GRANTED: RULE IN SHELLEY'S CASE. A will devising property to a son and to the heirs of his own body is not within the rule in Shelley's case, but created a conditional estate in the son, which upon the birth of issue would become absolute; and upon his death without issue the estate would revert to the heirs of the testator. To bring the will within the rule is Shelley's case the limitation to heirs must be by way of remainder, it does not apply to one and his heirs, or to the heirs of his body.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

THURSDAY, DECEMBER 12, 1912.

ACTION to quiet title. There was a judgment for the plaintiffs, and the defendant appeals.—*Affirmed.*

*Henderson & Henderson* and *Samson & Noble,* for appellant.

*Mills & Perry,* for appellees.

SHERWIN, C. J.—The plaintiffs alleged that their father, Jacob Sagers, died testate in 1903, seised of the land in controversy, and that by a codicil to his will he devised said land to his son, W. L. Sagers, and to the heirs of his own body; that said W. L. Sagers died testate in 1908, and in his will attempted to devise this real estate to his wife, Pauline Sagers, defendant herein, and that, because of such pretended devise, Pauline Sagers claims to be the owner of the real estate; that W. L. Sagers never begot a child, and consequently neither had nor left ''heirs of his own body''; that by reason of his death without issue the land upon his death reverted to the living heirs of the original testator, Jacob Sagers, who are the plaintiffs. The defendant demurred to the petition, on the ground that the facts stated therein did not entitle the plaintiffs to the relief demanded. The demurrer was overruled, and judgment was rendered for the plaintiffs; the defendant electing to stand on her demurrer.

The only question presented for our determination is whether W. L. Sagers took, under the will of his father, an absolute estate in fee simple or only a conditional fee. The appellant contends that the rule in *Shelley's* case applies, and that the will of Jacob Sagers created an estate in fee simple in W. L. Sagers, and that his devise to his wife, Pauline Sagers, the defendant herein, created an estate in fee simple in her. On the other hand, the appellees contend that the devise to W. L. Sagers created in him an estate in fee simple conditional, and, as he never had ''heirs of his own body,'' that the estate, upon his death, reverted to the heirs, of the testator, Jacob Sagers. We are of opinion that the will in question does not fall within the rule in *Shelley's* case. The devise was to W. L. Sagers and ''to the heirs of his own body,'' and the rule in *Shelley's* case can only be applied where there is an express or implied life estate with a limitation by way of remainder to the heirs.

In other words, to bring a conveyance or will within that rule, the limitations to heirs must be by way of re-

mainder. The distinction between instruments of that kind
and the one before us is well and accurately stated as fol-
lows: "A limitation to A. and his heirs created in A. a fee
simple, and a limitation to A. and the heirs of his body
creates a fee tail. So, under the rule in Shelley's case, a
limitation to A. for life, remainder to his heirs, creates a fee
simple, and a limitation to A. for life, remainder to the heirs
of his body, creates a fee tail. The difference between these
two sets of limitations is that in the first there is no express
limitation of an estate for life, and in the second there is.
Where there is an express limitation for life, A. takes the ·
fee by virtue of the rule in *Shelley's* case; where there is
no express limitation of life estate, A. takes the fee also,
but not by virtue of the rule in *Shelley's* case. That rule
does not apply, unless there is an express or implied life
estate with a limitation by way of remainder to the heirs.
. . . It is a plain misapprehension of the scope of the
rule in *Shelley's* case to assert that it applies to a conveyance
to a person and his heirs, or the heirs of his body." Note
in 29 L. R. A. (N. S.) 1008; *De Wolf v. Middleton,* 18 R. I.
810 (26 Atl. 44, 31 Atl. 271, 31 L. R. A. 146); *Doyle v.
Andis,* 127 Iowa, 36; *Pierson v. Lane,* 60 Iowa, 60; *Kiene v.
Gmehle,* 85 Iowa, 312; *Zavitz v. Preston,* 96 Iowa, 52; *Wes-
cott v. Binford,* 104 Iowa, 645.. See note in 7 Am. St. Rep.
428; *Miller v. Mowers,* 227 Ill. 392 (81 N. E. 420); *Johnson
v. Buck,* 220 Ill. 227 (77 N. E. 163); *Berry v. Williamson,*
11 B. Mon. (Ky.) 245; 25 Am. & Eng. Enc. Law, 644.

In *Wild's* case, 6 Reports, 17, 10 English Ruling Cases,
773, it was held that where lands are devised to a person and
his children, and he has no children at the time of the devise,
the parent takes an estate tail. The reason assigned for the
holding is that the intent of the devisor is manifest and cer-
tain that the children (or issue) should take, and as immedi-
ate devisees they cannot take, because they are not *in rerum
natura,* and by way of remainder they cannot take, for that

was not the devisor's intent, for the gift is immediate; therefore such words shall be taken as words of limitation.

In *Pierson v. Lane*, 60 Iowa, 60, cited above, the conveyance was to Minerva Pierson and "the heirs of her body begotten by her present husband. . . . To have and to hold the above granted and bargained premises. . . . unto the said Minerva Pierson and the heirs of her body begotten by said husband." And it was there held that the rule in *Shelley's* case did not apply, and that the grant created a conditional fee under the common law.) Under the common law, before the enactment of the statute *de donis* (13 Edw. I, chapter 1), it was held that such a conveyance created a conditional fee, because, if the grantee died without having the specified heirs, the land reverted to the grantor. As soon, however, as the specified heirs were born, the estate became absolute, and the grantee could alienate it. This rule was adopted by the court in *Pierson v. Lane*, and it was held that, as Minerva Pierson had the requisite heirs, she took an absolute fee, and could alienate the land. In *Kepler v. Larson*, 131 Iowa, 438, we distinctly said that conditional fees, as they existed before the enactment of the statute *de donis*, prevailed in this state.

In 4 Kent's Commentaries a conditional fee is thus defined: "A conditional fee is one which restrains the fee to some particular heirs, exclusive of others, as to the heirs of a man's body, or to the heirs male of his body. This was at the common law construed to be a fee simple, on condition that the grantee had the heirs prescribed. If the grantee died without such issue, the lands reverted to the grantor. But if he had the specified issue the condition was supposed to be performed, and the estate became absolute, so far as to enable the grantee to alien the land and bar not only his own issue, but the possibility of a reverter. By having issue, the condition was performed for three purposes: To alien, to forfeit, and to charge. Even before issue had, the tenant of the fee simple conditional might by feoffment have bound

the issue of his body. But still there existed the possibility of a reverter in the donor. After issue born, the tenant could also bar the donor and his heirs of that possibility of a reversion; but the course of descent was not altered by having issue. . The common law provided the *formedon* in reverter, as the remedial writ for the grantor and his heirs, after the determination of the gift of the conditional fee by the failure of heirs. Before the statute *de donis,* a fee on condition that the donee had issue of his body was in fact a fee tail, and the limitation was not effaced by the birth of issue. If the donee died without having aliened in fee, and without leaving issue, general or special, acording to the extent of the gift, the land reverted again to the donor. But the tenant, after the birth of issue, could and did alien in fee and this alleged breach of the condition of the grant was the occasion of the Statute of Westminster II, 13 Edw. I, chapter 1, commonly called the statute *de donis,* which recited the evasion of the condition of the gift by this subtle construction, and consequent alienation, going to defeat the intention of the donor.''

Blackstone defines a conditional fee as follows: ''A conditional fee, at the common law, was a fee restrained to some particular heirs, exclusive of others, . . . as to the heirs of a man's body, by which only his lineal descendants were admitted, in exclusion of collateral heirs, or of heirs male of his body, in exclusion both of collaterals and lineal females also. It was called a conditional fee by reason of the condition expressed or implied in the donation of it, that, if the donee died without such particular heirs, the land should revert to the donor. For this was a condition annexed by law to all grants whatsoever, that, on failure of the heirs specified in the grant, the grant should be at an end and the land revert to its ancient proprietor.''

In *Croxall v. Sherrerd* 5, Wall. 268 (18 L. Ed. 572), it was said: ''Estates tail, under the statute *de donis,* were, before the passage of the statute, known in the common law as conditional fees. Like estates tail, they were limited to

particular heirs to the exclusion of others. The condition was that if the donee died without leaving such heirs as were specified the estate should revert to the grantor. According to the common law, upon the birth of such issue the estate became absolute for three purposes. (1) The donee could alien, and thus bar his own issue and the reversioner. (2) He could forfeit the estate in fee simple for treason. Before he could only forfeit his life estate. (3) He could charge it with incumbrances. He might also alien before issue born; but in that case the effect of the alienation was only to exclude the lord, during the life of the tenant, and that of his issue, if such issue were subsequently born while if the alienation were after the birth its effect was complete and vested in the grantee a fee-simple estate. *Willion v. Berkley*, 1 Plowd. 241. In this state of the law it became usual for the donee, as soon as the condition was fulfilled by the birth of issue, to alien and afterwards to repurchase the land. This gave him a fee simple absolute for all purposes. The heir was thus completely in the power of the ancestor, and the bounty of the donor was liable to be defeated by the birth of the issue, for whom it was his object to provide. To prevent such results, and to enable the great families to transmit in perpetuity the possession of their estates to their posterity, the statute *de donis* of 13 Edw. I, known as the Statute of Westminster II, was passed.''

As we have said, the conditional fee of the common law, as it existed before the enactment of the statute *de donis*, is a part of the law of this state; and this being true, on the death of W. L. Sagers without the particular heirs specified in the will, the estate reverted to the testator's heirs, the plaintiffs herein. The judgment of the district court must therefore be *Affirmed*.

WEAVER, J., dissenting.