P. F. BIDDLE, Appellee, v. S. T. WORTHINGTON, Appellee; FAYE WORTHINGTON CLARK, Appellant; H. H. BROWNE, Receiver, et al., Intervenors, Appellants.

No. 41632.

MAY 9, 1933.

Johnson & Teter, for appellants Faye Worthington Clark and A. B. Worthington.

Vander Ploeg & Heer, for appellants H. H. Browne and Citizens Nat. Bank.

Howard L. Bump, for appellee Biddle.

STEVENS, J.—This is an action in equity to set aside a conveyance by the appellee S. T. Worthington and his wife to their daughter, the appellant Faye Worthington Clark, of 200 acres of land in Marion county. Grounds for attachment were alleged in the petition, and a writ was issued and levied upon the above real estate. S. T. Worthington, formerly a resident of Iowa, was interested as a partner in the Citizens Bank of Pleasantville. At the time of the commencement of this action, he was, and for several years prior thereto had been, a resident of California. On July 25, 1906, James Worthington, his father, conveyed to S. T. Worthington, by warranty deed, the land in controversy "during his natural lifetime with remainder to his legal heirs." The Citizens Bank of Pleasantville, becoming insolvent, closed its doors August 12, 1930, and its assets were on the same day taken over by a receiver. S. T. Worthington was then indebted to the bank on three promissory notes as follows: One for $310.84, one for $2,400 and one for $4,162, together with accumulated interest. The latter note was held by the Citizens National Bank of Knoxville as collateral security for indebtedness owing to it by the Pleasantville bank. S. T. Worthington was further indebted to his brother, A. B. Worthington, intervenor herein, upon a $6,000 note. In addition to the foregoing, he had joined in obligations of the Pleasantville bank in large sums. He was undoubtedly insolvent. On July 5, 1930, he conveyed the 200-acre farm in Marion county to his daughter Faye Worthington Clark. The Pleasantville Bank, at the time it closed its doors, was indebted to the plaintiff appellee in the sum of $12,455.06.

This action was commenced in May, 1931. It is, in addition to other essential allegations, alleged in the petition that the conveyance of the land in Marion county by S. T. Worthington to his

daughter was without consideration and for the purpose of hindering, delaying, and defrauding his creditors. As stated, a writ of attachment was asked and issued and levied upon the Marion county real estate. The prayer of the petition is that the conveyance be set aside and the lien of the attachment established and carried into effect. Petitions of intervention were filed by the receiver of the Pleasantville Bank, the Citizens National Bank of Knoxville, and A. B. Worthington. Each of the petitioners of intervention sought to defeat the attachment lien of the appellee and prayed for affirmative relief. The appellant Faye Worthington Clark, answering the petition in intervention of the receiver, alleged that, as a part of the consideration for the conveyance of the 200-acre farm, she agreed to pay the indebtedness of her father to the Pleasantville Bank and to the intervenor A. B. Worthington.

The argument of counsel covers a broad field, but, when the controversy is reduced to proper proportions, the decisive questions are simple enough. Both the grantor and the grantee in the deed of July 5th testified that they each understood and believed that the interest of the grantor in the land in controversy was limited to the life estate, and that the grantee, subject thereto, was the owner of the fee. Shortly prior to the execution of this deed, the Pleasantville Bank requested S. T. Worthington to pay his indebtedness to the bank. At that time, he was the owner of real estate in California heavily incumbered and the joint owner, with his wife, of property known as the Alhambra court. He then had in prospect a sale of the latter property. Both the grantor and the grantee further testified that the latter, as a part of the consideration for the conveyance, agreed to, and subsequently did, pay the grantor $2,000. On the very day the deed was executed S. T. Worthington wrote as follows to the tenant on the Marion county farm:

"Alhambra, Cal., July 5, 1930.

"My dear Don: Your letter rec'd few days ago & glad to hear from you as we always are.

"Glad Tony is interested in the farm & we will do every thing to make him safe as to title. Talked to an Ia. judge at Long Beach & he thot it best to deed it to Fay she being the only heir so we did that & she sent it back there to be recorded. What we would like would be to have him borrow the $8,000.00 & deduct 2 years int. at the rate he has to pay & if he wants

longer time we will pay the ·int. so he will not have to be out anything for int. In that way we can stop int. here & get bills payed.

"He can do the business thro his bank there at Knoxville & when satisfied every thing is all right pay the Citizens Bank $6000.00 or I can check on it at his bank & pay them. Pay himself first & the bal I can check on or he could send it here if they didnt charge for draft. They never charge exchange here on checks deposits.

"Want him to be satisfied & get what I owe him.

"May shape things here so that I will want to buy it back. About to trade the Court for a 14 a. orange grove at Downey. The real estate agent just now phoned he thot the deal would go thro but wanted till Monday night.

· "Guess you cant sell any thing any place. only exchange.

"I would have written this to Tony & not bothered you with it but got him to talk & he didn't do that much when I wrote him to buy the farm so he would get his money quicker.

"If you will pass this along talk it to Tony & hurry it up I will appreciate it.

"Love from the whole family."

Later, and in 1931, the property owned jointly by S. T. Worthington and his wife was sold for $27,000. Out of the purchase price was first deducted $13,000 of incumbrance. The remainder was paid, $7,000 in cash and by the conveyance to Mrs. Worthington of certain lots in Long Beach of the estimated value of $7,000. Later these lots were conveyed by the mother to Mrs. Clark. It is not claimed that any consideration was paid therefor. The deed conveying the Marion county property was sent by appellant to the recorder of that county and duly recorded. On August 8, 1930, a deed, blank as to grantee, was executed by appellant Faye Worthington Clark and her husband and, by an officer of a bank in California, forwarded to the Citizens National Bank of Knoxville, with directions to deliver the same to intervener A. B. Worthington upon the payment of $19,000. The letter directed that $4,000, plus interest, be credited upon the purchase price to be paid by A. B. Worthington, and that $6,000, plus interest on the note which evidenced the indebtedness of S. T. Worthington to the bank, be paid to it.

The letter was in error as to the amount of the note held

by A. B. Worthington. Mrs. Clark testified that she did not know that her father had given a renewal note of $6,000. It is admitted that if $2,000 was paid by Mrs. Clark to her father, as a part of the consideration for the conveyance of the land to her, it was paid out of the proceeds received by her mother from the sale of the Alhambra court.

The record contains no direct evidence of a fraudulent intent and purpose on the part of S. T. Worthington and Mrs. Clark to defraud his creditors. The fact situation is, however, rather unusual. The father was 68 years of age. The testimony of these witnesses is not convincing. It would be both unnatural and improbable that Mrs. Clark would have paid $2,000 to her father for his life estate and at the same time have agreed to sell the land and devote $12,000 or $13,000 of the proceeds belonging absolutely to her to the payment of certain creditors of her father. The payment of $2,000 to the father out of funds belonging to the mother would, to say the least, be an unusual transaction. The mother could, of course, have given the daughter the amount, and, if she in good faith paid it to her father, it would be binding upon all of the parties in interest. No reason is assigned why the mother should have conveyed the Long Beach lots to the appellant Mrs. Clark. The true reason for the transfer is evidently the one stated by S. T. Worthington in the letter quoted above. If appellant ever agreed to sell the property, which she then believed she owned, and pay $12,000 or $13,000 of her father's indebtedness, the agreement was oral, as no writing was ever entered into or signed by them. No doubt, S. T. Worthington desired to pay his indebtedness to the Pleasantville Bank and also to his brother. The brother A. B. Worthington was a prospective, and perhaps an agreed, purchaser of the land, and it may be inferred from the testimony that, but for the closing of the bank, the sale would have been consummated and the proceeds applied as directed in the letter to the Knoxville Bank.

S. T. Worthington also testified as follows:

"You know the way the deed read I was not the real heir but only a life leaser. Lawyer said I could only transfer a life lease as that was all I had. So thot Faye could transfer a better title."

Were it not for the subsequent transactions throwing light

thereon, the conclusion might be reached that the father and daughter acted in good faith, and that the transfer was solely for the purpose of making possible the conveyance of a good title. There is testimony in the record tending to show that the father had previously stated that he was the owner of the farm. It is difficult to perceive why the payment of $2,000 should have been exacted by the grantor under the terms of the alleged oral agreement between him and his grantee. We are abidingly satisfied that appellant Clark never in any way obligated herself personally, as a part of the consideration for the conveyance, to pay the indebtedness of her father, to the bank or the intervener A. B. Worthington. The most, it seems to the court, that can possibly be claimed at this point is that she was willing that the land, which she believed she owned, be conveyed to any purchaser, and that the proceeds be first applied to the payment of the indebtedness referred to.

As a matter of fact, Faye Worthington Clark had no interest whatever in the real estate. The conveyance to S. T. Worthington for life, with remainder to his heirs, falls squarely within the rule in Shelley's case. Instead of a life estate, he took the fee. This is so well settled by the following cases that we deem discussion unnecessary: Doyle v. Andis, 127 Iowa 36, 102 N. W. 177, 69 L. R. A. 953, 4 Ann. Cas. 18; Johnson v. Coler, 187 Iowa 734, 174 N. W. 654; Steffen v. Berend, 180 Iowa 127, 161 N. W. 994; Woodford v. Glass, 168 Iowa 299, 150 N. W. 69; Sagers v. Sagers, 158 Iowa 729, 138 N. W. 911, 43 L. R. A. (N. S.) 562; Brown v. Brown, 125 Iowa 218, 101 N. W. 81, 67 L. R. A. 629; Zavitz v. Preston, 96 Iowa 52, 64 N. W. 668; Pierson v. Lane, 60 Iowa 60, 14 N. W. 90; Slemmer v. Crampton, 50 Iowa 302; 18 Corpus Juris, 319; Kiene, Jr. v. Emilie Gmehle, 85 Iowa 312, 52 N. W. 232.

The claim of appellant Faye Worthington Clark that she paid her father $2,000 and assumed an obligation to pay the indebtedness owing by him to the Pleasantville Bank and to his brother as a part of the consideration for the land is so contrary to every probability as to be incredible. If she had $2,000 with which to make the payment, she did not use it for that purpose, and it is wholly improbable if she did that it would have been so applied. The payment, if made at all, was by the generosity of her mother. The land, according to the testimony, was worth $18,000 or $19,000.

It is the conclusion of the court that, whether fraudulent or not, the conveyance was purely voluntary, without consideration and,

therefore, fraudulent as to creditors. Nothing passed to appellant Clark by the deed except the naked legal title, and it is obvious from the letter of July 5th, copied above, that the sole purpose thereof was to provide for a good title. It was uncertain in the mind of the lawyer who advised Worthington as to whether the deed from his father conveyed the fee or only a life estate.

The prayer of the interveners for the establishment of a lien in their favor upon the property must be denied. This is obvious from the conclusion reached. In view thereof, nothing further need be said on their appeals.

■ II. Some contention is urged by counsel that the action of appellee against S. T. Worthington, a partner, and his private property, in the Pleasantville Bank, would not lie. That it will result in an unjust preference in his favor. The statute, section 10983 of the Code, authorizes the prosecution of an action against the partners jointly or separately. See, also, Roenfeld v. Poston, 186 Iowa 769, 171 N. W. 597, and Boeger & Buchanan v. Hagen, 204 Iowa 435, 215 N. W. 597, 55 A. L. R. 562. Further discussion is unnecessary. The decree and judgment of the court below is affirmed.—Affirmed.

KINDIG, C. J., and ALBERT, ANDERSON, EVANS, and KINTZINGER, JJ., concur.