**R. D. PRICHARD, as the Executor of the Estate of Jessie F. Thompson, Deceased, and Roy M. Thompson and Robert Riley Thompson, Appellants,**

v.

**DEPARTMENT OF REVENUE of the State of Iowa, Appellee.**

No. 53337.

Supreme Court of Iowa.

Jan. 14, 1969.

Prichard & Prichard, Onawa, for appellants.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., Raymond M. Beebe and Harry M. Griger, Asst. Attys. Gen., for appellee.

SNELL, Justice.

This is an action in equity for declaratory judgment. Plaintiffs are the executor of the estate and the two sons of Jessie F. Thompson. Defendant is the Department of Revenue of the State of Iowa.

The case before us presents interesting questions having their origin in the age of feudalism and a present problem as to whether relics of an ancient rule permit inter vivos alienation but prevent testamentary disposition of land.

We have been favored with excellent briefs and arguments by counsel.

The old questions have been thoroughly discussed and answered by legal scholars. Our court by dicta has indicated a current answer but otherwise we have a case of first impression.

There is no dispute as to the facts or issues. The facts were presented to the trial court by stipulation. We copy material parts of the court's Findings of Fact based on the stipulation and exhibits received in evidence incident thereto.

On August 7, 1911 Robert D. McKown and his wife Minnie S. McKown, residents of Illinois, made, executed and delivered to their unmarried daughter, Jessie F. McKown, "and the heirs of her body" a deed to 456 acres of land in Monona County, Iowa.

The daughter, Jessie, subsequently married and two children were born to her, Roy M. Thompson and Robert Riley Thompson, each of whom is now of full age and the only children of Jessie.

On August 11, 1967, fifty-six years and four days after the date of the deed, Jessie died, testate, a resident of Clinton, Illinois. She had not disposed of this property during her lifetime, and had made no effort to do so. Her will was admitted to probate in ancillary proceedings in Monona County, Iowa.

Her parents and grantors preceded her in death.

In the will of Jessie, her husband, Roy A. Thompson, who survived her, was given "all of my real estate * * * for the period of his natural lifetime only." Subject to that devise, the two sons, plaintiffs Roy and Robert Thompson, were given the remainder interest in the real estate. Except for a 40-acre tract in Illinois, the will did not specifically describe any real estate.

(Note: We are advised in appellants' argument that Roy A. Thompson, Jessie's surviving husband, had deeded any possible interest he might have in the premises and there is no conflict between him and his sons.)

It is apparent that Roy M. Thompson and Robert Riley Thompson became the owners of the real estate either by the deed from their grandfather or the will of their mother. The issue is by which instrument did title pass.

Plaintiffs, sons of Jessie, claim the property passed by the deed from their grandfather and was not a part of the taxable estate of Jessie.

Defendant, Department of Revenue, claims title passed by the will of Jessie and the land is subject to inheritance tax in accordance with section 450.3, Code of Iowa.

"The answer to this problem must be found in a construction of the legal effect of the deed in question, taking into account its working (to Jessie F. McKown) 'and the heirs of her body.'

"Plaintiffs and defendant are *together* most of the way, but part company before the final conclusion is reached. They agree that the wording of the deed created a fee simple conditional. The state claims that when issue was born to Jessie, the fee simple became absolute, and Jessie could do with it what she pleased, including devise it by will. Plaintiffs disagree with this theory, and maintain that Jessie could have deeded the land during her lifetime after issue was born," but could not dispose of the land by will. The issue is not the ordinary question of worthier title.

I. The agreement of counsel as to the source of the problem, i. e. a fee simple conditional, leads us to the writings of eminent scholars in the field of feudal law and the common law scheme of estates and future interests.

From the writings of Percy Bordwell, Professor of Law, University of Iowa, Professors Simes and Smith, Lewis M. Simes, Mechem Professor of Law, University of Michigan, and Robert W. Swenson, Professor of Law, Drake University, we summarize and quote.

Professor Swenson in his article says: "The Iowa lawyer has the unusual advantage of having access in his own library to the scholarly articles of Professor Percy Bordwell on the common law background." Iowa Code Annotated, vol. 36, page 74.

See the Common Law Scheme of Estates by Percy Bordwell, 18 Iowa Law Review 425, 33 Iowa Law Review 449, Simes and Smith on the Law of Future Interests, Simes Hornbook Series, Possessory Estates and Future Interests in Iowa appearing as an introduction in volume 36, Iowa Code Annotated.

A fee simple conditional was of feudal origin and definition and antedates the Statute De Donis enacted in 1285 and the Statute Quia Emptores enacted in 1290. For convenience we quote from Simes Hornbook Series:

"At a very early period attempts were made to convey in fee simple and at the same time restrict the inheritance to lineal heirs of the first donee. Thus A might convey Blackacre 'to B and the heirs of his body.' The donor doubtless intended, not only that the group of possible heirs would be limited to issue of the donee, but also that the inheritance by heirs of the body would not be defeated by any act of the donee. In this latter proposition, however, he was doomed to disappointment. The courts held that, when the donee had issue born to him, he could alienate by inter vivos conveyance in fee simple absolute and thus defeat any inheritance by his issue or any reversion to the donor on failure of issue. This estate, created by a conveyance to A and the heirs of his body, was called a fee simple conditional, since it was in fact a fee simple conditioned on issue being born to the donee.

"The landed aristocracy was dissatisfied with the judicial decisions permitting the alienation of the fee simple conditional. As a result, the Statute De Donis was enacted in 1285. It provided that, where gifts of land were made to one and the

heirs of his body, or conveyances in similar terms were made, the will of the donor should be observed so that the heirs of the body of the donee should not be defeated, or, if issue fail, so that the land would revert to the donor.

"After this legislation, the estate created by a conveyance to one and the heirs of his body came to be called an estate tail. It was regarded as a lesser estate than a fee simple. Hence, an owner in fee simple could convey in fee tail and retain a reversion; or he could convey in fee tail with a remainder to a stranger, so that on the failure of issue of the donee, the estate would pass to the remainderman. It would seem that the fee tail would enable a person to tie up land in the family for an indefinite period. But in spite of the express language of the Statute De Donis, the courts again permitted the donee in such a gift to defeat both the heirs of his body and the donor. It was held that, by a collusive suit known as a common recovery, in which the doctrine of estoppel by record figured prominently, the donee of a fee tail estate could convey a fee simple which would be good both against his heirs and his donor. * * *" (loc. cit. 10, 11)

Professor Bordwell says:

"As the tenant for life had been put in his place by the Statute of Gloucester, so was the tenant who held to him and the heirs of his body and the like, put in his place by De Donis. He had been allowed to disinherit his heirs and after issue born to bar the donor. These powers he was now denied even by means of a fine. No new name was given to his much deflated tenancy by De Donis itself. * * *

"Nowhere in De Donis are the words 'tail' or 'fee tail' used. For all that appears in the statute there was no intention of giving a new name to the gifts it was regulating. It has generally been accepted that they had been called 'conditional' because so much had depended upon the birth of issue, that when the statute changed this there was no longer any reason for calling such gifts 'conditional,' and that a new name was the consequence. But there is very little foundation for this view in the statute. * * *" 33 Iowa Law Review, loc. cit. 458, 459.

Feudalism centered around a peculiar type of land ownership. According to the theory at that time all land was held mediately or immediately of the king. The parceling out of interests or estates in the land was by descending ladder to the man at the bottom who actually used the land.

"One important feature of this tenurial relationship was that, if the tenant in fee simple died without heirs, the land escheated to his next overlord. This doctrine of escheat was not regarded as an incident of government as we think of it today, but rather as a reversion of the land to the landlord, who had parceled it out. * * *" Simes Hornbook Series, loc. cit. 7.

Various rights of escheat or reversion were created. By a method called subinfeudation a conveyor might make himself the landlord of his transferee, and a new tenurial relationship was created. This interfered with the possibility of escheat or reversion to the overlord and objections to subinfeudation developed. In 1290 the Statute Quia Emptores provided that no new tenures in fee simple could thereafter be created by anyone except the king. Land tended more and more to be held directly of the king.

"After the Statute of Quia Emptores 'true tenures,' that is, tenures involving new seigniories, could not be created except by the king but the old seigniories survived. Seisin as of fee or as of freehold was just as important in the law of actions as ever." 33 Iowa Law Review, loc. cit. 453.

These statutes, De Donis and Quia Emptores, sought to prevent such an alienation of an estate as would defeat the

devolution to issue or the possibility of reverter.

Professor Swenson in his article says:

"Quia Emptores did not abolish tenures created by conveyances of interests less than fee simple. Tenure of that sort still exists in a few situations in rather impersonal form, as, for example, in the relationship between the owner of land and a tenant for years. Many rules of the common law relating to future interests depended for their existence upon maintaining the lord-tenant relationship. It is a social anachronism, to say the least, that rules of that type survive in our modern property law." Iowa Code Annotated, vol. 36, page 75.

In a footnote Professor Swenson says: "Escheat evolved from the concept of tenure at common law. Escheat is now statutory. I.C.A. § 636.50. Thus, if the Statute of Quia Emptores is not in force in Iowa, it is because there is no need for it. [Citations]" On page 84 this appears:

"When a fee simple conditional is created, the interest retained by the conveyor is a possibility of reverter. Upon the death of the grantee, without having had issue, the fee will revert to the grantor or his heirs. Upon the birth of issue, the grantee has power to convey a fee simple. It is not clear from the decisions whether the Court would go so far as to hold that upon the birth of issue, the grantee automatically acquires a fee simple so that there would be no reverter if he failed to exercise his power and later died childless. Such a result would be desirable."

■ II. As we will discuss infra, our policy does not encourage restraints on the power of alienation and the Statute De Donis has been rejected as a part of the common law of our state. We must accordingly determine the extent to which we have deviated or should deviate from the common law as it existed prior to 1285.

"There is one marked difference between the possibility of reverter which arises after the fee simple determinable and the possibility of reverter which arises after the fee simple conditional. In the latter case, the holder of the estate in fee simple conditional has the power, after issue has been born to him, to alienate the land in fee simple absolute and thus extinguish the possibility of reverter. * * *" Simes and Smith, Law of Future Interests, section 281, page 328, vol. 1.

Restatement of the Law, Property I, section 69, page 251, says:

■ "A person who has an estate in fee simple conditional has, after birth of the required issue, both the privilege and the power, by conveyance inter vivos, to create any interest in such land which could be created by a person having an estate in fee simple absolute therein."

That is the law of Iowa. See Division III, infra.

Section 71, page 258, says:

"A person who has an estate in fee simple conditional has no power to devise any interest in the land so held."

Section 68, page 250, says:

"The conveyances described in Topic 1 of this Chapter create estates in fee simple conditional in those states wherein the Statute De Donis is held not to be in force and wherein there has been neither statutory nor judicial pronouncement fundamentally modifying the effect of such conveyances as they operated immediately prior to the enactment of the Statute De Donis."

A caveat appended to this section says:

"In states in which the question as to the effect of such limitations as are described in Topic 1 of this Chapter has not been adjudicated, * * * a court may decide that estates in fee simple conditional are not in accord with American institu-

tions and that the part of the common law dealing with such estates is not adopted in that state, and thereby reach a conclusion different from that stated in this Section."

Special note 1 to the Topic referred to says:

"The states which, before January 1, 1936, had declared the estate in fee simple conditional an existent estate were Iowa, Nebraska, Oregon and South Carolina. The body of judicial authority upon this topic differs greatly in the four named states. In Iowa, it is not extensive, but is clear and unequivocal and sufficient to establish this result as a rule of property in that state [citations] * * *."

We thus have recognition by the authors of the Restatement that a fee simple conditional has been an existent estate in Iowa with a caveat that we may decide that they are not in accord with our institutions or the law of our State.

Simes and Smith, supra, loc. cit. vol. 1, section 497, page 479, speaking of words necessary for a fee simple says: "It thus appears that in practically every jurisdiction there is a presumption, both in a deed and in a will, that a fee simple rather than a life estate has been granted or devised. * * *"

Professor Moynihan in his Introduction to the Law of Real Property, says:

"Beginning in the late eighteenth century and extending into the twentieth, state after state enacted legislation abrogating the fee tail and creating a statutory substitute so that at the present time only four jurisdictions, Delaware, Maine, Massachusetts, and Rhode Island (as to deeds only), recognize the estate as it existed at common law. The statutory provisions dealing with the fee tail are not uniform but they may be grouped under three main headings:

"A. The most common form of statute converts what would have been a fee tail at common law into a fee simple in the grantee or devisee. Thus, a limitation 'to B and the heirs of his body' will give B a fee simple. This result is reached in twenty-seven jurisdictions.

"B. In the next largest group of states (eight in all) the statutes substitute for the fee tail a life estate in the grantee or devisee and a remainder in fee simple in his issue. Thus, in these states a limitation 'to B and the heirs of his body' will give B a life estate and on B's death his issue will take in fee simple.

"C. In three states, Connecticut, Ohio and Rhode Island (as to wills only) statutes provide that an estate given in fee tail shall be an estate in fee simple absolute to the issue of the donee in tail. These statutes have the effect of giving the donee a fee tail for his lifetime only and on his death his issue take in fee simple. Thus, in these states a limitation 'to B and the heirs of his body' gives B an estate in fee tail for his life and on his death his children take in fee simple. * * *

"In the states of Iowa, Oregon and South Carolina the Statute De Donis is not deemed to be in force, hence a limitation to a man and the heirs of his body (or an equivalent limitation) will in those states create a fee simple conditional." (loc. cit. 41, 42 and 43)

American Law of Property, vol. I, section 2.11, pages 111 and 112, refers to the Iowa rule discussed in Division III, infra, as absurd and says:

"Creation and Characteristics of Fee Simple Conditional Estates. Under Modern Decisions. The early history of these estates has already been sufficiently discussed. All that remains is to consider the modern cases which, in some measure, have held that this ancient relic of the law of the thirteenth century is still law in some of the states because they adopted the English common law, but had not, at the same time, adopted the Statute de Donis Conditionalibus and the resulting estate tail. In Iowa, in a case decided in 1882 the court

held that under a grant to a woman and the heirs of her body by a certain husband, where a child was subsequently born to them, a deed made by the two jointly conveyed the property in fee absolutely. The court said that the Statute de Donis was not in accord with our institutions, since it created perpetuities in favor of aristocrats and a system of aristocracy, and held that the estate in question was a conditional fee, as it would have been before 1285, when that statute was enacted, and that on the birth of a child, the subsequent deed operated to convey a fee absolute. In several later cases the courts followed this holding, recognizing the conditional fee as part of the common law of Iowa, but creating and applying no law other than that on the birth of a child the property could be conveyed in fee free of the entail, and in one case enforcing the right of reverter on failure of issue. If the court had decided that the entail involved in the conditional fee was equally hostile to our institutions and way of life, and therefore should be rejected, just as the fee tail was rejected, when the English common law was made the subsidiary law of Iowa, the result would have been the same in each of the above cases except the last; i. e. an absolute estate in fee to the subsequent grantee. In the last case above referred to, where there was a reverter on failure of issue, the conditional fee was necessarily involved, but dependent solely on the false reasoning in Pierson v. Lane, the only case in Iowa in which reasons were given for this absurd law."

We do now decide that where as in a fee simple conditional there is a right of inter vivos alienation there is a corresponding right of testamentary disposition.

That is the only issue before us.

We recognize that there is respectable authority to the contrary. 28 Am.Jur.2d Estates, section 40 on page 124, says: "A tenant in fee simple conditional may not dispose of the property by devise in his will." Cases from South Carolina are cited in support of the statement.

III. We agree with counsel that there are only four Iowa cases dealing directly with fee simple conditional estates. In 1882 our court recognized a fee simple conditional as an existent estate in Iowa and rejected the Statute De Donis as a part of our law. See Pierson v. Lane, 60 Iowa 60, 14 N.W. 90. In that case real property was transferred by deed to "Minerva Pierson, and the heirs of her body, begotten by her present husband, George W. Pierson, * * * forever, to them and their own proper use, benefit and behoof." Minerva Pierson and her husband, George, had children. Minerva and her husband, George, conveyed the land to Lane. After Minerva's death her children claimed the property as her heirs. Defendant Lane claimed the property under the conveyance from Minerva and her husband.

The court considered the rule in Shelley's Case, conditional fees, the Statute De Donis and fee tail estates. The court traced the law through the Territory of Michigan to the Territory of Wisconsin to the Territory of Iowa and the repeal thereof by the territorial legislature of Iowa. The cases were analyzed and such authorities as Blackstone and Kent considered. The opinion then says:

"The direct object of the statute de donis was to place restraints upon alienation and create perpetuities for the purpose of maintaining a landed aristocracy. Such purpose is entirely foreign to the genius and policy of our institutions. 'The general policy of this country does not encourage restraints upon the power of alienation of land.' 4 Kent Comm., 17. We feel constrained to hold that the statute de donis is not 'applicable to the habits and conditions of our society,' nor 'in harmony with the spirit, genius, and object of our institutions,' and hence that it is not in force as a part of the common law of this State. Whether the limitations in the grant in question should have any greater

force than simply to define the class of heirs who should inherit in the absence of alienation of the property, we need not determine.

"It appears that Minerva Pierson had the requsite (sic) heirs, which under the common law, aside from the modification of the statute de donis, made her *fee absolute*. The conveyance by Minerva Pierson and her husband to the defendant invested him with the entire estate. * * *" (loc. cit. 64 of 60 Iowa, 14 N.W. 92)

The first part of this quotation from Pierson v. Lane is quoted in an article in 12 Drake Law Review 99 followed by this observation: "Although the concept of free alienability has been a constant concern in Anglo-American Law, perhaps no court has more succinctly and unambiguously stated its position."

■ We note that the court used the words "fee absolute." In such a carefully considered opinion we do not think these words were used by accident or inadvertence. The owner of a fee absolute has the power of testamentary disposition except for the statutory rights of a surviving spouse.

■ The common law rule known as the rule in Shelley's Case mentioned in cases involving titles created prior to July 4, 1907, was abolished in Iowa by the 32nd General Assembly. This is now section 557.20, Code of Iowa, and is not involved in the case at bar. See also Sagers v. Sagers, infra, loc. cit. 731.

Kepler v. Larson, 131 Iowa 438, 108 N.W. 1033, 7 L.R.A.,N.S., 1109, decided in 1906, involved rights under the rule in Shelley's Case and in the alternative a conditional fee. The grantee attempted to mortgage the property. The court held that if a conditional fee it was alienable on the birth of issue.

Sagers v. Sagers, 158 Iowa 729, 138 N.W. 911, 43 L.R.A.,N.S., 562 (1913), in-volved a conditional fee and a reversion on the death of the holder without issue. There was a failure of issue and a reversion resulted. In discussing a conditional fee the court said:

"The condition was that if the donee died without leaving such heirs as were specified the estate should revert to the grantor. According to the common law, upon the birth of such issue the estate became absolute for three purposes. (1) The donee could alien, and thus bar his own issue and the reversioner. (2) He could forfeit the estate in fee simple for treason. Before he could only forfeit his life estate. (3) He could charge it with incumbrances. He might also alien before issue born; but in that case the effect of the alienation was only to exclude the lord, during the life of the tenant, and that of his issue, if such issue were subsequently born; while if the alienation were after the birth its effect was complete and vested in the grantee a fee-simple estate." (loc. cit. 734, 138 N.W. 912)

Shope v. Unknown Claimants, 174 Iowa 662, 156 N.W. 850 (1916), was an action to quiet title involving a deed to the grantee in trust for the lawful heirs of his body. In discussion the court said:

"The law covering this case seems to be well settled, and we shall not go into a detailed discussion of the subject or attempt to repeat the reasoning in the different cases. It has been held in this state that the law creating conditional fee estates prevails in Iowa. Pierson v. Lane, 60 Iowa, 60, 14 N.W. 90; Kepler v. Larson, 131 Iowa, 438, 108 N.W. 1033; Sagers v. Sagers, 158 Iowa, 729, 138 N.W. 911. Such a fee is one which restrains the fee to some particular heirs, exclusive of others. This was at the common law construed to be a fee simple on condition that the grantee had the heirs prescribed. If the grantee died without such issue, the lands reverted to the grantor; but if he had the specified issue, the condition was forfeited and the estate became absolute,

so far as to enable the grantee to alien the land and bar not only his own issue, but the possibility of a reverter.

"*  *  * The title vested upon the birth of the heir.  *  *  *" (loc. cit. 665–666, 156 N.W. 851)

IV. Adverting to our statement in Division II, supra, that whereunder a conditional fee there is a power of alienation by deed there is also the right to dispose by will we find support in dicta in our cases discussed in Division III, supra. Our cases repeatedly use the words "fee simple" and "absolute." In Sagers v. Sagers, supra, there was a failure of issue and the estate never vested to the extent of permitting alienation. The holding was that under those facts the land reverted to the grantor and was not subject to devise by will. The case is not the same as here where there was issue. Nowhere in our cases do we find authority contrary to our conclusion that there is a right to dispose of the property by will except for what might be read into the Sagers opinion because of the reversion. To that extent the Sagers case is overruled.

We think sound reason supports our conclusion. If the condition incident to the fee is fulfilled by the birth of issue and the estate is then "absolute" or in fee simple and subject to alienation it should be subject to devise by will.

As noted in Division II, supra, only four states have followed the common law rule of fee simple conditional. They are Iowa, Nebraska, Oregon and South Carolina.

Nebraska has abrogated the rule by statute. The Oregon rule involves the construction of a statute.

Concerning the South Carolina rule American Law of Property, vol. I, page 112, section 2.11 says:

"In South Carolina, there is almost a complete lack of any attempt to sustain this law by reasons. The earliest case, on which all the later cases depend, contains a bare statement of the rule with an N.B. appended that the Statute de Donis is not in effect. In not one of the cases which follow is any effort made to sustain the rule by reasoning of any kind; each simply cites the prior cases."

In Iowa we have described the fee after the birth of issue as "absolute" and "a fee simple" and subject to alienation. Some text writers have merely accepted a rule that there could be no devise by will, others have been critical.

In the case before us we hold that upon the birth of issue title in fee simple absolute vested in Jessie F. McKown Thompson and that reversions and remainders were extinguished. Jessie had the right to dispose of the property as she saw fit. To repeat the words from Pierson v. Lane, supra, a rule to the contrary "is not 'applicable to the habits and conditions of our society,' nor in harmony with the spirit, genius, and objects of our institutions  *  *  *." (loc. cit. 60 Iowa 64, 14 N.W. 92)

V. The authorities use the word "alienate" and hold that upon the birth of issue there is a right of alienation. According to sound authority a definition of the word "alienate" would include the power of disposition by will and we so hold.

In Lane v. Maine Mutual Fire Insurance Co., 12 Me. (3 Fairf.) 44, 48, 28 Am.Dec. 150, (1835), a case dealing with property insurance this appears on page 151: "The word alien, or alienate, extends not only to alienations of land in deed, but also to alienations in law. A transfer of title by devise, descent or by levy would be as technically an alienation as a transfer by deed. Blackstone, speaking of title by alienation, b. 2, c. 19, says: 'The most usual and universal method of acquiring a title to real estate, is that of alienation, conveyance or purchase in its limited sense; under which may be comprised any method by which estates are voluntarily assigned by one man, and accepted by another,

whether that be effected by sale, gift, marriage settlement, devise, or other transmission of property by the mutual consent of the parties.'"

In Burbank v. Rockingham Ins. Co., 24 N.H. 550, 57 Am.Dec. 300 (1852), this is found on page 302:

"As understood at common law, to alienate real estate is voluntarily to part with the ownership to it either by bargain and sale, or by some conveyance, or by gift or will. The right to alienate was a right which the owner had over the real estate, to divert it from the heir. Alienation differs from descent in this, that alienation is effected by the voluntary act of the owner of the property, while descent is the legal consequence of the decease of the owner, and is not changed by any previous act of volition of the owner. A sale and conveyance is an alienation that takes effect from the time of the transfer, while a devise is an alienation that takes effect on the decease of the testator, according to the terms of the will."

Shortly after 1900 there were several cases in various states involving land given to Indians by the U. S. Government. Practically all of these cases dealt with restrictions on alienation in the deeds from the Government to the Indians. One of the common questions involved in these cases was whether the restrictions on alienation pertained to the power to dispose of the property by will. This question was answered in the affirmative. Jackson v. Thompson, 38 Wash. 282, 80 P. 454 (1905), is typical of these cases. On page 456 of the Jackson case this appears: "There can be no question that under authority the word 'alienate' means, among other things, the power of disposition by will. * * *"

Hiles v. Benton, 111 Neb. 557, 196 N.W. 903 (1924), quoted with approval the following from 2 C.J. 1035: "In its broadest sense, alienation comprises any method wherein estates or property are voluntarily resigned by one man and accepted by anoth-

er; whether that be effected by sale, gift, marriage settlement, devise * * *."

Menzner v. Tracy, 247 Wis. 245, 19 N.W. 2d 869 (1945), states: "Alienation of real estate is the transfer of the ownership of it by the owner 'either by bargain and sale, or by some conveyance, or by gift or will.'"

3 C.J.S. Alienable, page 515, states:

" * * * It is a familiar term, commonly used with relation to the disposition of real estate, which in its accustomed sense, and by the great weight of judicial interpretation and definition, has been held to include the disposition of real estate by will, as well as by conveyance. * * *"

In the same volume of C.J.S. under the subheading Alienation, on page 517, the following appears:

"In its broadest sense, alienation comprises any method wherein estates or property are voluntarily resigned by one man and accepted by another, whether that be effected by sale, gift, marriage settlement, devise, or other transmission of property by the mutual consent of the parties." Under these definitions Jessie F. Thompson alienated by her will.

There is no claim before us that a conveyance to "A and the heirs of his body" does or does not convey a fee simple absolute. We do not reach that question.

■ VI. We conclude that Roy M. Thompson and Robert Riley Thompson took title to the land involved by the will and devise of their mother, Jessie F. Thompson, and the land was a part of her estate.

The case is

Affirmed.

All Justices concur, except MASON, RAWLINGS and BECKER, JJ., who concur in the result.