(April Term, 1939)

## JENSEN ET AL. v. JENSEN ET AL.

(No. 2089; May 2, 1939; 89 Pac. (2d) 1085)

For the plaintiffs and appellants there was a brief by *C. R. Ellery* and *A. G. McClintock,* both of Chey-

enne, and oral argument by *Mr. McClintock.* There was no appearance for the defendants and respondents.

ILSLEY, District Judge.

This is a suit under the Declaratory Judgment Act by the plaintiffs against the defendants seeking a construction of the deed herein referred to and a declaration of plaintiffs' and defendants' rights thereunder.

Plaintiffs' petition alleges that in 1892 Angeline Bly and D. G. Bly executed a deed to Mrs. Elizabeth Murray, later Elizabeth Murray Fought, and the heirs of

her body, wherein the Blys conveyed to Mrs. Murray and "unto her and the heirs of her body forever". a parcel of land in the city of Cheyenne. This deed also contains this provision:

"The property hereby conveyed being under the absolute control of Elizabeth Murray, and the heirs of her body, free from any control or interest whatever of the husband of the said Elizabeth Murray, or the husbands of the heirs of her body."

It is then alleged that Mrs. Murray, later Mrs. Fought, died in 1935; since her death, plaintiffs have been in the exclusive possession of the land conveyed by such deed; that the only surviving heirs of the body of Elizabeth Murray are the plaintiffs Maude A. Jensen and Myrtle B. Gardenhire, and the defendant Willis George Jensen, a son of Maude A. Jensen; that Angeline Bly and D. G. Bly are deceased and their heirs unknown. The plaintiffs then set forth and contend that the deed should be construed as creating a life estate in Elizabeth Murray in the real estate with the remainder in fee simple in these plaintiffs as the heirs of the body of Elizabeth Murray; that there is some doubt under the laws of Wyoming as to their rights and status under the deed and that until such doubt is cleared up and plaintiffs' rights under the deed declared they will be without merchantable title and without knowledge of their rights in regard to the parcel of land. The plaintiffs then pray for a declaration (1) that under the terms of the deed they are now the owners in fee simple of the real estate therein described; (2) that defendants be declared to have no right, title or interest, vested or contingent, in said real property; (3) that the title in fee simple in said real property be quieted in the plaintiffs and the defendants be forever debarred from asserting any estate or interest whatsoever in the real property adverse to these plaintiffs.

Thereupon notice was published as to the unknown heirs of the Blys. A guardian ad litem was appointed for Willis George Jensen and the guardian answered admitting all of the allegations of plaintiffs' petition but alleged that the effect of the deed in question created a life estate in Elizabeth Murray Fought, and upon her death a life estate in the plaintiffs, and upon their deaths a life estate in Willis George Jensen for whom he appeared and prayed for a declaration to the effect that the deed creates an entailed estate, giving to plaintiffs a life estate and that upon their death the real estate becomes the property of the heirs of their bodies.

Upon the trial, the deed was admitted in evidence, and it indisputably appears from the evidence that the plaintiffs and defendant Willis George Jensen are the only heirs of the body of Elizabeth Murray Fought, and the original grantors (the Blys) are dead and their heirs unknown. That the deed had been executed; that the grantee in the deed (Mrs. Murray) is dead; that the plaintiffs are now in possession of the property, and the trial court made its findings accordingly.

The trial court declared (1) the effect of the deed was to create in the grantee, and the heirs of her body, a fee tail estate in said lands; (2) that said Elizabeth Murray Fought being now deceased, the plaintiffs are the tenants in fee tail of the lands, and entitled to the possession and use thereof during their natural lives; (3) that upon the death of plaintiffs, defendant Willis George Jensen, will be entitled to the possession and use of the lands during his natural life, and should plaintiffs have further issue, said defendant will have equal rights with such issue; (4) that the heirs of Angeline and D. G. Bly are the owners of the reversion of the fee simple estate and upon any subsequent failure of issue of the body of Elizabeth Murray Fought, will be entitled to the lands in fee simple absolute; (5)

that plaintiffs cannot bar entailment in the lands by a conveyance of a fee simple estate, except by compliance with Sections 89-3922 to 89-3930, inclusive, Wyo. Rev. Stat. 1931, in which event the rights of the parties thus declared will vest in such personalty as is substituted for the lands, i. e., the plaintiffs will be entitled to the income therefrom during their lives; upon their decease the defendant, Willis George Jensen, will be entitled to such income for his natural life and upon subsequent failure of issue of the body of Elizabeth Murray Fought, the heirs of the Blys will be entitled to receive the entire corpus however invested, as their absolute property free from any entailment.

To these rulings and declarations, plaintiff preserved proper exceptions. Summarized, the errors complained of by plaintiffs are to the effect that, the trial court should have declared with respect to the third declaration that the defendant Willis George Jensen will be entitled to the premises for his life if the plaintiffs should die without having previously conveyed the fee simple estate; with respect to the fourth declaration, the court should have declared that upon subsequent failure of issue of the body of Elizabeth Murray Fought that the heirs of the Blys will be entitled to the lands if the plaintiffs or subsequent tenants in tail have not conveyed a fee simple estate therein; with respect to the fifth declaration, the court should have declared that *plaintiffs may at any time* convey a fee simple estate in said premises by warranty deed, thereby barring all right, title and interest of any kind of the defendants in said lands or in the proceeds therefrom.

An estate tail has been defined:

"An estate in fee tail, then, or as it is frequently called, an estate tail, may be defined as an estate of inheritance which, if left to itself, will, after the death of the first owner, pass to his lawful issue, including

children, grandchildren, and more remote descendants, in the regular order of descent from such owner and will terminate on the failure of such posterity." Tiffany on Real Property (2d. ed.) p. 54; 21 C. J. 931.

Although infrequently referred to, estates tail are expressly recognized in Wyoming by R. S. 1887, Sec. 3009, now 89-3922, W. R. S., 1931, which authorizes the owner in fee tail to maintain an action to secure a sale of an estate in fee simple absolute, providing that the court shall order such sale, being satisfied "no substantial injury to the heirs in tail" will result thereby. And again by W. R. S. 1931, Sec. 89-3927, W. R. S. 1887, Sec. 3014, which explicitly directs that the proceeds of such sale be substituted for the land sold and be subject to the same conditions originally made relative to the land so sold.

The estates tail come to us from the common law of England dating back to the thirteenth century. Those interested in their history will find an excellent discussion with reference to their development in the Kansas case of Ewing v. Nesbitt, 88 Kan. 708, 129 Pac. 1131.

We may assume that at the time the trial court entered its declaratory judgment in this action, the court was eminently correct. Since that time, however, the Wyoming legislature has done that which many of the other states have accomplished, in abolishing the indefinite restriction on the power of alienation, in estates tail by passing a law with reference to the subject. It is contained in Section 1 of Chap. 92, Sess. Laws of 1939 as follows:

"No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this state, shall be given or granted, by deed or will, to any person but such as are in being, or to the immediate issue or descendants of such as are in being at the effective time of such deed or will; and all estates given in tail shall be and remain absolute estates in fee simple to the issue of the first donee in tail. The law relating to

estates in tail in real property shall apply to entailed estates in personal property."

Therefore, if the plaintiffs found themselves in their present situation, under a law as is now expressed by this new statute, such a deed as is now being considered would give the plaintiffs a fee simple estate. Will the fact that Chapter 92, supra, was passed since the present situation arose, and even since this case has been perfected on an appeal to this court deprive these plaintiffs of an absolute fee simple estate?

A review of the history of estates tail,—See, Ewing v. Nesbitt, supra—from the earliest times in America clearly shows that it was the right of the tenant in tail to bar entailment by a conveyance, although this was accomplished by indirection, fictitious, round-about and laborious proceedings. Some courts have held that the statute de donis conditionalibus was never recognized because it was contrary to the spirit of our institutions. Kepler v. Larson, 131 Ia. 438, 108 N. W. 1033; Rudkin v. Reid, 88 Conn. 292, 91 Atl. 198.

Many of the states have corrected the entailing of estates by the simple process of passing a remedial statute. Restatement of the Law of Property, pp. 202, 210.

Wyoming has recently done this very thing. What then is the effect of Chap. 92, Session Laws, 1939, upon the situation before us? Do these defendants have a vested interest in this property so that this new law, with respect to entailed estates, cannot affect them?

In the state of Kansas, where by Legislative Act there was a deliberate modification of the common law relating to estates tail (See, Ewing v. Nesbitt, supra) and later by another Act, this subject matter was omitted, thus resulting in a repeal by implication. That court, in keeping with the tendency of American courts to discard form and retain substance, declared that fines and recoveries were obsolete and that a convey-

ance of record might still be accomplished by ordinary deed. If it is proper to do this without a statute, it would seem clearly proper to do so, where the Legislature, by Statute, requires it.

A remedial statute has been defined to be one which does "not create, enlarge, diminish, or destroy vested rights." 59 C. J. 1106. The early case (1853) of DeMill v. Lockwood, 3 Blatch. 56; Federal Cases, No. 3782, held that the Legislature may by a special act change an entailed estate to that of a fee simple estate, stating, "The Legislature by so doing would not take any right of property from anyone and vest it in another. They would not take any strict legal right from anyone. For the issue of the donee in tail, has no strict legal right until after the death of such donee. During the life of such donee such issue has no right to the entailed estate which can be conveyed; but only a possibility or expectancy or capability of inheriting. He has no right to convey." And in Illinois, an heir apparent or presumptive has no estate, legal or equitable, vested or contingent, in the real estate of the person whose heir he is, during the latter's lifetime. People v. Emery, 314 Ill. 220, 145 N. E. 349.

From the state of Ohio, we have adopted Sections 89-3922 to 89-3930, W. R. S. 1931, regarding the disposition of entailments. The courts of Ohio in Pollock v. Spiedel, 27 Oh. State, 86, where an estate in tail was created by deed in 1807, and the issue of the first donee in tail sold and conveyed the premises in fee simple, in the year 1836, by warranty deed, and previously by a statute passed in the year 1811 to restrict the entailment of estates, which provided that "all estates given in tail shall be and remain an absolute estate in fee simple to the issue of the first donee in tail," (this provision being the same as in Sec. 1, Chap. 92, Wyo. Sess. Laws, 1939), held that this was intended to limit entailments then subsisting, as well as those which

might be thereafter created. And further held this statute was not an interference with *vested rights,* nor beyond the legislative power. Both the first donee and his heirs were thereby forever estopped to claim title to the premises against the grantee of such issue or assigns.

It may be argued that such a statute, Chap. 92, supra, would deprive these defendants of vested property rights without due process of law. Again the Supreme Court of Ohio has said:

"There are no heirs, but only heirs apparent, to the living, persons with mere expectancies or possibilities of inheritance which may be fulfilled or defeated, depending upon various contingencies and situations. An heir apparent, therefore, has no vested right in the estate of his ancestor prior to the latter's death, and consequently no vested property rights therein. Legislation dealing with estates of persons who die after its effective date does not deal with vested rights."

Orstrander v. Preece, 129 Oh. St. 625 at 632, 196 N. E. 670. And further, that a statute modifying or changing the law of descent and distribution of property and right to inherit is not an unlawful interference with vested rights but merely defines the right of inheritance to property of those who die within the time the statute is in effect. Id.

We are of the opinion that under Chapter 92, Wyo. Session Laws, 1939, the plaintiffs are now the owners of a fee simple estate in the real estate described in the original deed, and that the declarations of the trial court should be modified to conform with the views herein expressed.

RINER, Ch. J., and KIMBALL, J., concur.