GEORGE E. MILLER *et al.*

*v.*

ANNA MOWERS.

*Opinion filed April 18, 1907—Rehearing denied June 5, 1907.*

1. DEEDS—*elements necessary to application of rule in Shelley's case.* In order that the rule in *Shelley's case* may apply to a deed there must be a gift or conveyance of a freehold estate to the ancestor, and a limitation over, by way of remainder, to his heirs; and the question of intention, in a given case, does not turn upon the quantity of the estate intended to be given to the ancestor, but upon the nature of the estate intended to be given to the heirs.

2. SAME—*the proper method of applying rule in Shelley's case.* The proper method of applying the rule in *Shelley's case* to a deed is to interpret the deed by the ordinary rules of construction as if the rule did not exist, and having ascertained the grantor's intention, then, if the intention conflicts with the rule, apply the rule.

3. SAME—*when the rule in Shelley's case does not apply.* The rule in *Shelley's case* does not apply to a deed which, in the grant-

ing clause, conveys to the "grantee, her heirs and assigns, all of the following described lands * * * during her natural lifetime," and which, in the *habendum* clause, provides that the land shall be held by the grantee; "her heirs and assigns, during her natural lifetime," and under such a deed the grantee takes only a life estate. (*Lambe* v. *Drayton,* 182 Ill. 110, distinguished.)

4. SAME—*court may look to the surrounding circumstances in construing a deed.* In construing a deed, in case of ambiguity, the court may consider the intention of the parties as gathered from the surrounding circumstances as they existed at the time the deed was executed, and give the deed such a construction as the parties themselves intended, if consistent with the language used.

5. SAME—*what tends to show that a deed was intended to convey but a life estate.* In construing a deed granting to the grantee, "her heirs and assigns," certain described property "during her natural lifetime," the facts that the deed was made to carry out a partition agreement giving the grantee, as the widow, a life interest in the land described, and that she made no mention of the land in her will, which disposed of her other property, are circumstances tending to show the deed was intended to convey but a life estate.

6. SAME—*written part of deed controls printed part in case of conflict.* In case of a conflict between the written part of a deed and the printed part the written part controls the construction of the instrument; and if the deed is drawn by a person unskilled in the work, less attention will be paid to technical words than would otherwise be given them.

APPEAL from the Circuit Court of Ogle county; the Hon. R. S. FARRAND, Judge, presiding.

Anna Mowers, appellee herein, filed her bill in the circuit court of Ogle county to the April term, 1905, praying for the partition of 120 acres of land in that county. It appears that Daniel Miller died in Ogle county in 1874, intestate, and seized in fee simple of the 120 acres in controversy and three other farms situated in Ogle and DeKalb counties, in all about 560 acres, and leaving Catherine M. Miller, his widow, him surviving, and Olin W. Miller, Franklin Miller, and appellants, George E. Miller, Wright I. Miller and Emma J. Miller, his children and only heirs-at-law. Shortly thereafter, Franklin Miller, one of the sons, died intestate and unmarried, leaving his sister, mother and

brothers his only heirs-at-law.   Daniel Miller resided with his family in a dwelling house situated on the 120 acres here in question, and after his death the widow continued to reside there and was entitled to an estate of homestead therein and to dower in all the lands.   She and the surviving children were desirous of making a division or partition of the lands among themselves according to their respective interests.   Wright I. Miller, the youngest son, was not then of age.   In June, 1877, they called in John H. Patten to advise with them.   Patten acted as administrator of the estates of both Daniel and Franklin Miller and duly administered the same.   He was also the guardian of the minor son, Wright.   Each of the parties at this time claimed his or her lawful share.   Patten's testimony as to the manner in which he computed the widow's share is substantially as follows:   After some discussion they agreed on the total value of the land as $20,685.   From this he deducted $1000 as the homestead of the widow.   The remaining amount, $19,685, he divided by three to find the value of the land to which the widow was entitled as dower. Two-thirds of this remainder, or $13,123.32, he divided by five to find the amount to go to each heir, which gave $2624.66.   He divided this amount by three to find Mrs. Miller's share in her deceased son Franklin's estate, giving $874.88, leaving $1749.79 of the deceased son's share to be divided among the three brothers and the sister.   He estimated that Mrs. Miller's share was the homestead, $1000, and one-third of the remainder, $6561.66, and her one-third share in Franklin's estate, of $874.88, making a total of $8436.54.   The 120 acres of land was valued at $8200, leaving, as they then figured, $236.54 still due her.

It is evident that the widow's interest as to dower and homestead would be a life estate only, while her interest by descent from her deceased son would be an undivided estate in fee.   The trial court, in its decree of partition, found that she held the portion acquired from her son Franklin in

fee, and provided for the distribution of that portion accordingly.

Mr. Patten further testified that it was understood that each of Daniel Miller's heirs was to retain his interest in the 120 acres, undivided; that the rest of the land was to be divided among the three boys at the prices fixed; that they were to settle for the differences in the value of the farms they respectively took, by paying cash among themselves, and were to pay cash to their sister for all her interest in the lands.

Shortly thereafter, by articles of agreement dated August 22, 1877, prepared by Patten, their understanding as to the division was put in writing and signed by all the parties. Those parts of the agreement which bear upon the present discussion read:

"That the party of the first part, [Mrs. Catherine M. Miller, the widow,] for and in consideration of the use and right of during her natural lifetime as given by the laws of the State of Illinois in homestead and dower of widow in the real estate of her husband, and $236.54 in money, [then describing the 120 acres in controversy,] has and by these presents does relinquish all her right and claim, of whatsoever kind, as the widow of the late Daniel Miller, deceased, and heir of the estate of Franklin Miller, deceased, her son, in the lands, [then describing the land that was to go to the children.] And the parties of the second part, [the children,] for and in consideration of the relinquishing of her right by the party of the first part in the above described lands, has and by these presents does give to the party of the first part the use of the lands before described, [then describing the 120 acres of land in question,] during her natural lifetime, as given by the laws of the State of Illinois in case of widows in the estate of their husbands."

The son Wright I. Miller was not of age at the time, and it was agreed that within two months after he became of age all the papers and guaranties to carry out the con-

tract should be executed. He became of age eight or ten months later, and shortly thereafter deeds were prepared by said Patten to carry out the contract in question and transfer the interests in the real estate in accordance therewith. By deed dated April 5, 1878, the four children, and the wife of each son who was married, conveyed to their mother the 120 acres of land, the deed being written on a blank form of what is known as the long-form warranty deed, and certain erasures made and certain parts written in. In order to have a full understanding of the questions involved as to the construction of this deed, the parts to be considered are herewith given in full, the part printed in the deed being here given in ordinary type and the written part in italics, with the words crossed out as they were in the original deed. That deed, with these notations, is as follows:

"This indenture, made this *fifth* day of *April,* in the year of our Lord one thousand eight hundred and seventy-*eight,* between *Olin W. Miller and his wife, Kate Miller, George E. Miller and his wife, Mary Miller, Emma Jane Miller and Wright I. Miller, all heirs of the estate of Daniel Miller and Franklin Miller, party of the first part, and Catherine M. Miller,* party of the second part:

"Witnesseth, That the said party of the first part, for and in consideration of the sum of *the deeding of the three hundred and eighty acres of other lands* dollars ~~in hand paid~~ by the said party of the second part, the receipt whereof is hereby acknowledged, ha*ve* granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said party of the second part, *her* heirs and assigns, all the following described lots, pieces or parcels of land, situate in *town of Monroe,* in the county of *Ogle* and State of *Illinois,* *during her natural lifetime, to-wit: The east (½) half of the south-east (¼) quarter of section number (13) thirteen, township number (42) forty-two, range No. (2), east of the third P. M. and the south-east (¼) quarter of the north-east (¼) quarter of section number (13) thirteen, town-*

*ship number (42), forty-two, range number (3) three, east of the (3d) third principal meridian.* Together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever of the said party of the first part, either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances. To have and to hold the said premises above bargained and described, with the appurtenances, unto the said party of the second part, *her* heirs and assigns forever *during her natural lifetime."*

Then follow the usual covenants and homestead waiver. The deeds conveying the land to the three sons according to the agreement were drawn up and signed at the same time and the settlement made in accordance with said agreement. There was no consideration for these deeds except the carrying out of the agreement and the mutual deeding and payments made in carrying out the division.

In 1874 one of the sons, Olin W. Miller, and his wife, at the July term of the Winnebago county court, adopted the complainant, whose name was then Anna Azor, her name being then changed to Anna Miller. She afterwards married one Mowers. Her adopted father, said Olin, died in Kansas in 1879, leaving a will, which was duly probated in that State and in which he devised all his estate to his "adopted daughter, Anna."

Catherine M. Miller died in DeKalb county January 2, 1904. She had never claimed any other interest in the 120 acres than a life estate. She left a will conveying her other property, but stated that she had nothing to do with the real estate in question,—that it was not hers. So far as the record discloses, none of the appellants herein ever claimed until after her death that the said Catherine ever had a fee in this 120 acres. Appellant Wright I. Miller filed a peti-

tion in the county court of DeKalb county asking for the probate of his mother's will, in which he stated that she died seized and possessed of no real estate. The other appellants, George and Emma M. Miller, entered their appearance in the matter of said petition. In the inventory filed by said Wright I. in his mother's estate he describes the land in controversy and states that she only had a life interest therein, the fee simple being in George E., Wright I. and Emma J. Miller, children and heirs-at-law of Catherine M. Miller.

After the pleadings were settled by amended bill and answer the cause was referred to a master in chancery to take proofs and report his findings. He reported that the deed in question conveyed a fee simple title to Catherine M. Miller, but that the intention of all the parties thereto was to convey to her only a life estate, and that the deed ought to be reformed so as to give but a life estate in accordance with such intention; that the rights and interests of the parties were as stated in the amended bill and that appellee was entitled to a decree of partition. Exceptions to this report were overruled and decree entered finding that all the material allegations of the bill were true; finding the rights and interests of the parties in the lands and property; decreeing a reformation of the deed by striking out the word "heirs" in both the granting and *habendum* clauses; decreeing a partition of said lands in accordance with the prayer of the petition, and appointing commissioners. From this decree an appeal was prayed to this court.

CLIFFE & CLIFFE, and D. W. BAXTER, for appellants.

F. E. REED, and J. C. SEYSTER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main question in this case is as to what interest in the lands in question was conveyed to Catherine M. Miller by the deed of April 5, 1878. If it conveyed only a life

estate, then the title to the remainder in the 120 acres in question would have been left in those persons who on April 5, 1878, owned the premises, and the title to the premises at the present time would be in those same persons or those who now rightly claim by, through or under them, respectively. If it should be held that the deed conveyed a fee, then the further question arises whether the court was authorized, on this record, in reforming it by striking out the word "heirs," so that it would only convey a life estate. If the court holds that the deed conveyed a fee to Catherine M. Miller and cannot be reformed, then the property will descend to and be divided among her heirs.

Appellants contend that the deed, in terms, conveys a life interest to Catherine M. Miller and the remainder to her heirs, and that the rule in *Shelley's case* must then necessarily apply and the fee to the land, under said rule, have vested by the deed in said Catherine M. Miller. This court held in *Baker* v. *Scott,* 62 Ill. 86, that one accurate expression of this rule was, that "where the ancestor takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, either in fee or in tail, the heirs are words of limitation of the estate, and not words of purchase." This definition has been quoted many times, and always with approval, in the decisions of this court. We held in *Johnson* v. *Buck,* 220 Ill. 226, (p. 234,) that two elements must necessarily enter into every deed to which this rule applies: "First, there must be a gift or conveyance of a freehold estate to the ancestor; and second, there must be a limitation, by way of remainder, to his heirs." In discussing this rule we have held that the question of intent in determining whether it is applicable in a given case does not turn upon the quantity of the estate intended to be given to the ancestor but upon the nature of the estate intended to be given to the heirs. (*Vangieson* v. *Henderson,* 150 Ill. 119; *Carpenter* v. *VanOlinder,* 127 id. 42; *Baker* v. *Scott, supra.*) The

authorities state that the proper method of applying the rule in *Shelley's case* is to interpret the deed or will by the ordinary rules of construction, precisely as if the rule were not in existence; having ascertained the testator's intention, then look at the rule and see whether such intention conflicts with it. If it does, the rule must nevertheless be applied, as it has no exception and is absolute. *Grimes* v. *Shirk,* 169 Pa. St. 82; 25 Am. & Eng. Ency. of Law, (2d ed.) p. 642, and cases cited.

With these principles in mind, does this deed convey anything more than a life estate to anyone, either ancestor or heirs? Both the granting and *habendum* clauses undertake to describe the estate conveyed. In the granting clause the words are, "grant, bargain and sell unto the said party of the second part, her heirs and assigns, all the following described lands, * * * during *her* natural lifetime." Then follows the description of the land. The *habendum* clause reads: "To have and to hold the said premises above bargained and described, with the appurtenances, unto the said party of the second part, her heirs and assigns, during *her* natural lifetime." Had the word "heirs" been left out in both clauses there could have been no question that only a life estate was intended. Had the words "during her natural lifetime" been left out of both clauses then an estate in fee would be conveyed by the deed to the grantee. Had the words "heirs and assigns" been transposed and placed after the words "during her natural life," with proper connecting words, the rule in *Shelley's case* would then apply, as there would be a plain intention to grant the whole estate, and the fee, under that rule, would be in the grantee, Catherine M. Miller. (*Deemer* v. *Kessinger,* 206 Ill. 57.) The use of the word "heirs" in the connection in which it is used in both of these cases is not a common one. We find no decisions in this State that have construed the word in such connection. Preston, in his work on Estates, (vol. 1, p. 479 and the following pages,) discusses in detail this

word and its meaning in connection with an estate in fee or a freehold estate, and on page 481 says that "a gift during widowhood is, by construction of law, to determine on the death of A, or, which shall first happen, on her marriage, and for that reason is merely an estate for life though limited to her and to her heirs; hence an estate to A or B and his or her heirs, during widowhood, will, notwithstanding the limitation to the heirs, determine on the death of A or of B, unless it should determine, in the meantime, by her marriage." By the same line of reasoning, plainly under this authority both of these clauses would be construed as giving a life estate to the grantee. Unless this be the construction then the meaning of the deed is ambiguous, and the court has the right, in construing it, to consider the intention of the parties as gathered from the surrounding circumstances as they existed at the time it was executed, and give the deed a construction such as the parties themselves intended, if consistent with the language used. *Seymour* v. *Bowles*, 172 Ill. 521; 17 Am. & Eng. Ency. of Law, (2d ed.) p. 21; *Rubens* v. *Hill*, 213 Ill. 523; *Storey* v. *Storey*, 125 id. 608; *Mueller* v. *Northwestern University*, 195 id. 236.

There can be no dispute that when this deed was signed the parties were simply trying to carry into effect the agreement they had signed the previous summer. Under the authorities heretofore cited, the intention of the parties in a case of ambiguity can be gathered from surrounding circumstances, and this contract may properly be examined in order to find out just what interest was intended to be conveyed by the deed. We have so held in *Piper* v. *Connelly*, 108 Ill. 646. The law presumes, also, that if a person makes a will she intends to dispose of her entire estate. (*Heller* v. *Heller*, 147 Ill. 621.) Catherine M. Miller, deceased, although she left a will, made no mention of this real estate. From 1878, the time when this deed was made, until 1904, when Catherine M. Miller died,—about twenty-

six years,—all the parties to this litigation, as well as the grantee in the deed, construed the instrument as if it had only conveyed a life estate. The term "heirs" is not always used with the same meaning. It may be used as a word of limitation or as a word of purchase, according to the context. (*Dick* v. *Ricker,* 222 Ill. 413; *Seymour* v. *Bowles, supra.*) When a deed was evidently drafted by one not skilled· in such work, greater latitude is permitted and less attention paid to technical words in construing the instrument than would otherwise be the case. (*Campbell* v. *Gilbert,* 57 Ala. 569; *Griswold* v. *Hicks,* 132 Ill. 494.) An examination of the copy of this deed given in the statement shows that whatever ambiguity exists has arisen on account of the printed and written parts of the deed not being in entire harmony. Had the printed form of warranty deed not been used, it is very clear that the term "heirs," printed in both the granting and *habendum* clauses, would not have been inserted in the writing. The fact that the words "the sum of" and the word "dollars," in the granting clause, were not erased shows the lack of skill in the drafter of the instrument, as does also the leaving of the term "heirs" in both clauses, while the fact that the word·"forever," in the *habendum* clause, was stricken out, furnishes very strong evidence that the interest intended to be granted was not the entire fee, but only a life estate. If there be any conflict in a deed between the printed part and the part written in, the latter will control in construing it. *Loveless* v. *Thomas,* 152 Ill. 479; *City of Chicago* v. *Weir,* 165 id. 582; 17 Am. & Eng. Ency. of Law, (2d ed.) p. 21; *White & Gleason* v. *City of Chicago,* 188 Ill. 392.

The case of *Lambe* v. *Drayton,* 182 Ill. 110, is relied upon by appellants to support their construction of the deed. That case held that a fee simple devise in a will could not be limited and reduced to a life estate by a subsequent so-called *habendum* clause. The reasoning in that case does not conflict with the construction here placed upon this deed. Mani-

festly, the intention of the parties when the deed now under discussion was executed was to convey only a life estate. The entire fee was not conveyed by the deed, and no attempt was made, by way of limitation, to convey the remainder to the heirs. The rule in *Shelley's case* cannot be here invoked, and there is no rule of law that prevents the carrying out the plain intent of the parties to the deed. *Riggin* v. *Love,* 72 Ill. 553; *Cover* v. *James,* 217 id. 309.

The chancellor, in entering the decree, reformed the deed by striking out the word "heirs." As our conclusion is that the deed conveyed only a life estate it is unnecessary to reform the deed.

In view of what we have already said it will serve no useful purpose to discuss the other points raised in the briefs.

Finding no reversible error in the record the decree of the circuit court is affirmed.          *Decree affirmed.*