### KAUFFMAN et al. v. DEIGNAN et al.
### No. 12143.

Court of Civil Appeals of Texas. Galveston.
Dec. 22, 1949.

Both Parties Rehearing Denied Feb. 16, 1950.

272

Hutcheson, Taliaferro & Hutcheson, Thad T. Hutcheson and Edward C. Hutcheson, Houston, for appellants.

Vinson, Elkins, Weems & Francis and Tarlton Morrow, Houston, for appellees.

GRAVES, Justice.

This controversy involves the validity and construction of an instrument of as--signment from W. R. Davis, Incorporated, a corporation, to Leo P. Deignan, as a mere nominee of and taking title for White, Weld & Company, a New York copartnership, dated January 6, 1941, and recorded in Volume 121, pages 15–18, of the Deed Records of Starr County, Texas.

The assignment in question purports to convey an undivided one-fortieth (1/40) in an undivided one-half interest of all the right, title and interest now owned and held by W. R. Davis, Incorporated, in and to the oil, gas and mineral leasehold estates created and existing under and by virtue of certain oil, gas and mineral leases, in so far as they each cover the respective tracts of land therein described, aggregating about 8385 acres; a substantial copy of such assignment being hereto attached, and made a part hereof, as Exhibit A.

Appellees sued the appellants for construction of the copied assignment, claiming that it should be construed to convey, in effect, an undivided 1/80 interest in the described leasehold working-interests, and *alternatively* prayed that, if the court did not agree with their construction of the instrument, then it should be reformed, because it did not express the intention of the parties, and there was a mutual mistake.

The appellants opposed the construction sought by appellees, and, in turn, contended that the instrument should be construed

to convey no more than an undivided 1/160 of the leasehold working-interests, if · it was a valid conveyance at all; they also filed a cross-action against appellees, seeking to have the court cancel and rescind the assignment, as for both lack of consideration and lack of corporate authority for execution and delivery of the instrument.

The trial court rendered judgment for appellees, holding that the declared-upon instrument was ambiguous, but, when construed in the light of extrinsic evidence (admitted over the objection of appellants), it conveyed an undivided 1/80 interest.

The court also held· the appellees' alternative plea· for reformation of the instrument was barred by limitations, from which portion of the judgment they have perfected a cross-appeal.

It further ruled in favor of appellees and against appellants on the latters' claims for cancellation, rescission, and reformation of the instrument.

There having been no jury, the court filed extensive findings-of-fact and law in support of its judgment as rendered, which need not be at length repeated here; but, for the purposes of the opinion to follow, the 4th finding-of-fact and conclusions of law numbers 1 and part of 2, were as follows: "I find that the assignment of date January 6, 1941, as above described, properly construed in the light of the assignment itself and all the facts surrounding the making, tender and execution of the instrument, and the transmittal thereof after execution for delivery, and the practical interpretation placed thereon by the parties; show that the intent of all the parties in executing and delivering the instrument and in the acceptance of the same was to convey a 1/40 of 1/2, or 1/80, of the entire working interest under the leases and a corresponding interest in the other properties, subject to the burdens described and set forth in said assignment." "1. I conclude as a matter of law that the proper construction to be placed upon the assignment of date January 6, 1941, hereinbefore described, is that it conveys a 1/80 in the entire working-interest and the lease-holds described therein and a corresponding interest in and to the wells, personal property and production, subject to the burdens described and set forth in said assignment. 2. I conclude as a matter of law that, in view of the conclusion-of-law hereinbefore stated, it is unnecessary to pass upon the question of reformation asked by the plaintiffs, but, etc."

In this court both sides have at length reiterated and reasserted the soundness of their various contentions below, as summarized above.

In pursuit thereof, they have favored this court with able briefs and oral arguments, following their respective several lines of contention; but, under the view taken here of the reaches of the cause as a whole, it is deemed unnecessary to categorically take up and pass upon the various presentments of either side.

This for the reason that it is concluded that the trial court—in the main—, as expressed in its above-quoted finding-of-fact No. 4, and conclusions of law Nos. 1 and part of 2, rendered a correct judgment herein, although it gave erroneous reasons therefor.

In· other words, that the proper judgment was rendered with wrong reasons assigned therefor, which, under well-settled authority, did not require a reversal thereof. 25 Tex.Jur., par. 87, page 460, and authorities cited under footnotes. 4, 5, and 6; Vol. 24, Texas Digest, Judgment, █ page 372, and cited authorities, especially Gough v. Jones, Tex. Com.App., 212 S.W. 943; Austin v. Conaway, Tex.Civ.App., 283 S.W. 189; Magnolia Petroleum Co. v. Caswell, Tex.Civ. App., 295 S.W. 653, Id., Tex.Com.App., 1 S.W.2d 597, Id., Tex.Com.App., Id., 7 S. W.2d 863, 278 U.S. 640, 49 S.Ct. 34, 73 L.Ed. 555.

It is further held that the assignment of interest here involved was correctly construed from the face thereof, when its various provisions are reconciled, in the light of the conditions to which they are addressed, and which they intended to provide for.

That is, when it is examined in the light of the rule of construction thus applied by the Supreme Court of the United States, in the case of Merrill-Ruckgaber Co. v. United States, 241 U.S. 387, 36 S. Ct. 662, 664, 60 L.Ed. 1058; "It (this case) involves for its solution the construction of a contract, and the rules to guide such construction we need not rehearse. To its words we at first resort, but not to one or a few of them, but to all of them as associated, and as well to the conditions to which they were addressed and intended to provide for. The argument of appellant ignores this rule. As we shall see, it makes one word dominant, controls all others by it, and puts out of view the demands of the physical conditions."

In this instance the general object sought to be attained by the assignment of January 6, 1941, was undisputedly shown to have been evidenced by two instruments, instead of the one; that is, that a foregoing instrument in the form of a letter had passed between the same parties here, dated October 4, 1940, of which the assignment was but an extension and carrying-out of an agreement first made between them at the prior date of such letter; that is, such letter, a copy of which is also appended hereto as Exhibit B, and made a part hereof, as plead herein by the appellee, and found by the trial court, was part and parcel of, indeed, was the basis for, the succeeding assignment.

As its terms likewise unmistakably import, the mutual intention of the parties thereto would reasonably seem to have been for the Davis corporation to assign to the New York partnership "one and one-quarter per cent (1-1/4%) of our present entire working interest in these properties".

To put it another way, the October 4th letter and the January 6th assignment were declared upon by the appellees, as parts of one and the same transaction, and were so found in fact, upon sufficient evidence, to have been such by the trial court.

■ Wherefore, since the instruments were so shown to have been in pari mater-ia, by the same parties, and with reference to their respective interests in the same property, their consideration and construction together as such is not thought to have been violative of the ancient and honorable, but still subsisting, doctrine of parol-evidence: that an instrument, which is plain and unambiguous on its face, may not be interpreted by parol.

■ Moreover, it is the duty of the courts to harmonize apparently contradictory or ambiguous portions of an instrument before them in such way, if possible, that all parts may stand; hence, they will not strike down any portion, unless there is an irreconcilable conflict, wherein one part thereof destroys the effect of another. Associated Oil Co. v. Hart, Tex. Com.App., 277 S.W. 1043, 1044; Stevens v. Galveston H. & S. A. R. Co., Tex.Com. App., 212 S.W. 639; Dallas Joint Stock Land Bank v. Harrison, 138 Tex. 84, 156 S.W.2d 963; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, 444.

This court is not impressed with appellants' argument, based upon decimal fractions and mathematics, and urging that they show that the instrument here conveys a 1/80 of a 1/2, or a 1/160 interest, when no such figures are mentioned in it; whereas, appellees say it conveys a 1/40 of 1/2, or a 1/80 interest.

Had there been an intent to convey such a 1/160 interest, that purpose could have been very plainly recited—that is, 1/80 of 1/2, instead of "an undivided 1/40 in an undivided 1/2 interest"; which latter, from the compelling force of other parts of the instrument must have meant the undivided 1/2 interest belonging to the grantor, W. R. Davis, Incorporated.

By simple arithmetic, on the other hand, such description reasonably meant a 1¼% interest, just as the October 4th letter gave it. And when the habendum-clause of the assignment is looked to, it adds little short of certainty to that construction, when it applies the same method of designating the interest intended to be conveyed to the same "undivided one-fortieth (1/40) in an undivided one-half (1/2) interest" in the

wells located on said premises, whether drilled or to be drilled thereon, and the personal property and equipment thereon.

■ If, however, there be any doubt about the assignment's face itself having been intended to convey an undivided 1/40 of an undivided 1/2 interest, the preceding contract, in the form of the letter of October 4, 1940, which was its forerunner, may be looked to, in the effort of the courts to reconcile any possible conflicts in documents so tied together as these two were.

■ The principle of law involved is thus stated in 26 C.J.S., Deeds, § 91, p. 343: "Also the agreement upon which the deed is founded may be admissible or referred to to explain an uncertainty or ambiguity in the latter." See, also, Fidelity Trust Co. v. McKeithan Lumber Co., D. C., 212 F. 229; Miller v. Mowers, 227 Ill. 392, 81 N.E. 420; Collins v. Herbert, Tex.Civ.App., 219 S.W.2d 814.

■ As these authorities make plain, related documents which are part of one in suit, or which embody the agreement upon which the latter was founded or out of which it grew, such related instruments may be referred to to clear up what was left uncertain in the other, as the Federal Court thus put the matter in the cited McKeithan case, 212 F. 229, 238, par. 4: "The evidence is that that deed was executed in pursuance of the contract, and it being later in date than the contract, and executed in pursuance of it, the court holds that, as to all matters in that deed which cover matters included in the contract, the deed of conveyance represents the consummation of the intent of the parties and the final construction of the contract at that time, and supersedes the contract; that as to any matters of ambiguity in the deed, or as to any matters referred to and to be performed in the contract, not covered by the terms of the deed, the contract would be referred to as the contract between the parties."

The trial court properly refused the affirmative relief sought by the appellants, as indicated supra.

■ As the findings-of-fact properly determined, the record shows that W. R. Davis owned all the stock of W. R. Davis, Incorporated; that its board of directors, on April 18th of 1941, by resolution, recognized the existence of the assignment here involved, which operated as a ratification thereof. Grisham v. Anderson, 125 Tex. 26, 79 S.W.2d 619, 623; Simons v. Stanolind, 134 Tex. 332, 114 S.W.2d 226; Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S.W. 627.

■ Neither was there any lack of consideration for the instrument, since it was an executed conveyance, indeed had been lived under and practically both recognized and construed by both parties—without dispute between them as to the construction thereof—for six years following its date. Wherefore, an inquiry as to a consideration therefor was not material, upon the issue of construction, as raised upon this trial. Baker v. Westcott, 73 Tex. 129, 133, 11 S.W. 157; 14 Tex.Jur., Sec. 51, "Deeds", page 808.

Upon like considerations, and under findings of relevant facts the other way, appellants' claims that the instrument was never properly executed at all by W. R. Davis, Incorporated, are considered to be without merit, without further discussion.

Since the appellees' cross-appeal and cross-assignments in support thereof were only conditionally submitted, upon a contingency that has not materialized, they became immaterial.

Finally, in view of the fact that—the appellants, being Mr. Kauffman, executor and cotrustee of the W. R. Davis will, along with the other cotrustee and all the beneficiaries thereunder, and the appellees, being Leo P. Deignan, as alter ego for them and White, Deld & Company themselves—the final controversy was essentially between the same parties-in-interest as those who executed both the documents, hereto attached, under the A and B exhibit numbers; that is, it is as if Mr. Davis himself, on the one side, and White, Weld & Company, the partnership, on the other, were now confronting each other, where-

in Mr. Davis was thus so lately saying that he never had intended to assign to them the 1/40 of the 1/2 interest his contract called for, but only half that much.

The trial court in effect found upon conclusive, if not undisputed, testimony that such original parties acted under the assignment here in suit, and mutually construed it as having conveyed only the 1/40 of 1/2 of the W. R. Davis interest, from the dates of the letter of October 4, 1940, and the assignment itself dated January 6, 1941, for 6 years; that is, until on or about January 1st of 1947, after it had been shown that Mr. Davis, through his sole-owned corporation, had received the 4,000,000 barrels of oil he was to receive under both such instruments before the grantees thereunder should realize anything, and until on or near such latter date, to wit, sometime in February of 1947, when these appellants, for the first time, apparently upon a query then made a claim to the effect that the assignment by the Continental Oil Company, set up conveyed a 1/40 of 1/2 of 1/2, or a 1/160 of the whole.

Whereupon this suit, seeking to iron out that belated contention, was filed.

The conclusions stated require an affirmance of the trial court's judgment, when construed as is done in this opinion.

Judgment affirmed.

### Exhibit A

"State of Texas ⎫ ss: Know All Men
"County of Starr ⎭ By These Presents:

"That W. R. Davis, Incorporated, a Nevada corporation, for and in consideration of the sum of Ten Dollars ($10) and other good and valuable considerations to it in hand paid by Leo P. Deignan, having his principal office at 40 Wall Street, New York City, N. Y., receipt whereof is hereby acknowledged, has sold, transferred and conveyed and does hereby sell, transfer and convey unto the said Leo P. Deignan, his heirs, executors, administrators and assigns, an undivided one-fortieth (1/40) in an undivided one-half interest of all the right, title and interest now owned and held by W. R. Davis, Incorporated, in and to the oil, gas and mineral leasehold estates created and existing under and by virtue of the following oil, gas and mineral leases in so far as they each cover the respective tracts of land herein described, said leases and lands being as follows: (Here appear descriptions of six leases.)

"Said leasehold estates and property hereby conveyed in so far as they are affected by the terms and provisions of the following described assignments, conveyances, mortgage deed of trust and assignment and contracts are subject to such assignments, conveyances, mortgage deed of trust and assignment and contracts and this assignment and conveyance is also made subject to the terms and provisions of said assignments, conveyances, mortgage deed of trust and assignment and contract, to wit:

"1. That certain assignment and conveyance from D. D. Oil Company and Dee Davenport to Davis & Company, Incorporated, dated September 8, 1939, and recorded in Vol. 111 at page 475 of the Deed Records of Starr County, Texas, supplemented and amended by agreement between the parties, dated December 11, 1939, and recorded in Vol. 113, at page 175, of the Deed Records of Starr County, Texas, and as further supplemented and amended by agreement between the parties, dated February 12, 1940 and recorded in Vol. 113, at page 516, of the Deed Records of Starr County, Texas, and to the rights and interests reserved by said D. D. Oil Company and Dee Davenport therein; and that certain contract between Transwestern Oil Company and Davis & Company, Incorporated, of even date with and referred to in assignment from Transwestern Oil Company and Davis & Company, Incorporated, dated September 8, 1939 and recorded in Vol. 111 at page 487 of the Deed Records of Starr County, Texas, as supplemented and amended by agreement between the parties, dated December 11, 1939 and recorded in Vol. 113 at page 175 of the Deed Records of Starr County, Texas, and as further supplemented and amended by agreement between the parties,

dated February 22, 1940 and recorded in Vol. 113 at page 519 of the Deed Records of Starr County, Texas, and to the rights and interests reserved by said Transwestern Oil Company in said separate contract of September 8, 1939, as supplemented and amended.

"2. That certain conveyance and operating agreement between W. R. Davis, Incorporated, and Continental Oil Company dated November 1, 1940 (hereinafter referred to as the Continental Agreement) affecting all of the leasehold estates above described;

"3. That certain mortgage deed of trust and assignment made and entered into on the 13th day of November, 1940, between W. R. Davis, Incorporated, and A. N. Murphey as Trustee, securing the payment by W. R. Davis, Incorporated, of $1,250,000 to the First National Bank of Boston, Boston, Massachusetts; $1,000,000 to the Harris Trust & Savings Bank, Chicago, Illinois; $750,000 to the Bank of The Manhattan Company, New York, N. Y.; and $500,000 to the First National Bank and Trust Company of Oklahoma City, Oklahoma City, Oklahoma, affecting all of W. R. Davis, Incorporated's interest in all the leasehold estates above described;

"4. That certain agreement made and entered into on the 18th day of November, 1940, between W. R. Davis, Incorporated and Oil Trading Company, Inc., a New York corporation, affecting all of W. R. Davis, Incorporated's interest in the production from all the leasehold estates above described.

"To Have And To Hold unto Leo P. Deignan, his heirs, executors, administrators and assigns, the hereinabove specified interest in the leasehold estates above described together with an undivided one-fortieth (1/40) in an undivided one-half interest in the wells located on said premises or now being or hereafter drilled thereon and the personal property and equipment therein and thereon which is attached to and constitutes a part of such wells, or is required in the operation of the same, but subject to the reservations, exceptions and provisions as follows:

"(a) W. R. Davis, Incorporated reserves unto itself and shall have the right to receive all of the production from the leasehold estates above described as if this sale, transfer and assignment had not been made until there shall have accrued to or W. R. Davis, Incorporated shall have received 4,000,000 barrels of oil out of the interest of W. R. Davis, Incorporated in the above described leasehold estates, as stated or provided for in the aforementioned Continental Agreement.

"Said 4,000,000 barrels of oil shall be reduced by that quantity of oil which could be currently purchased at the field with the proceeds received by W. R. Davis, Incorporated from the sale of gas, distillate or natural gasoline accrued to or received by W. R. Davis, Incorporated out of the interest of W. R. Davis, Incorporated in the above described leasehold estates, as stated or provided for in the aforementioned Continental Agreement.

"(b) Leo P. Deignan shall not be required to pay any cost or expense of exploration and development of the above described leasehold estates or of operation of said estates or the wells drilled or to be drilled thereon except from and not in excess of the pro rata share of the production from the above described leasehold estates to which Deignan shall be entitled and Deignan shall not be charged with (1) any part of the cost and expense of operation until Deignan shall be entitled to receive his pro rata share of production or (2) any part of the cost and expense of exploration and development until Continental Oil Company shall have expended or paid the sum of $2,000,000 pursuant to the Continental Agreement.

"And the said W. R. Davis, Incorporated warrants unto the said Deignan that it is the owner of the interests and property hereby conveyed and further covenants that it will warrant and defend the title thereto against the claims of all persons whomsoever claiming or to claim the same by, through or under the said W. R. Davis, Incorporated, but not otherwise.

"This agreement shall inure to the benefit of Leo P. Deignan, his heirs, executors, administrators and assigns.

278

"Witness the execution hereof and the corporate seal of W. R. Davis, Incorporated, this 6th day of January, 1941.

"W. R. Davis, Incorporated
"By: /s/ W. R. Davis
"President

"Attest:
"William C. Blind,
Secretary
"(Duly Acknowledged.)"

Exhibit B
"October 4, 1940
"White Weld & Company
"40 Wall Street
"New York City
"Gentlemen:

"We have today entered into an agreement looking toward financing in connection with our Rincon properties. This agreement provides that it is not to be effective should we conclude and close an agreement with the Continental Oil Company, which we are now negotiating. Should the agreement, which we have entered into this day not come into effect, in consideration for your services in negotiating loans on our behalf, even though we have been unable to take advantage of these loans, we agree to assign to you an undivided interest in our present working interest of the properties set forth in Exhibit A annexed to the agreement of even date; such interest which we agree to assign is one and one-quarter per cent (1 1/4%) of our present entire working interest in these properties.

"This assignment to you is subject to the agreement which we are entering into with the Continental Oil Company and to any and all liens which will be placed on such properties pursuant to that agreement and to our right to receive the 4,000,000 barrels of oil provided for in that agreement without any right on your part to share therein.

"You agree that with respect to this undivided interest, which we agree to assign to you, we shall act on your behalf in all matters pertaining to the operations and development of the properties vis-à-vis ourselves and Continental Oil Company and we agree that you shall not be required to advance any monies in the development and operation of the properties. Any such expenses to be borne by you shall be deducted from the income accruing to you from your interest.

"The documents of assignment shall be executed and delivered as soon as practicable after the closing of the agreement with the Continental Oil Company if such agreement is carried out and performed.

"In the event that the Continental agreement is closed, we agree to reimburse you for expenses incurred in connection with the contract of even date, such expenses not to exceed $2,500. It is understood that we will pay the charges of Baker, Botts, Andrews & Wharton rendered to you to date in connection with this agreement.

"Your signature to a copy of this letter will constitute an agreement between us.

Yours very truly,
"W. R. Davis Incorporated
"W. R. Davis, President
"Accepted:
"White Weld & Company
"Gurdon W. Wattles"